LEO V. CONCANNON & another *vs.* PETER P. GALANTI.

Norfolk. October 6, 1964. — October 30, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Damages,* For breach of contract. *Contract,* Building contract, Waiver. *Accord and Satisfaction. Waiver. Interest.*

Findings by an auditor in an action did not require a conclusion that a landowner who took possession of a dwelling built on his land by a

contractor and paid most of the contract price for the construction relinquished claims against the contractor for defective work and failure to observe the plans and specifications or that there had been a settlement of the claims or an accord and satisfaction.   [73–74]

In an action by a landowner against a contractor who built a dwelling on the plaintiff's land for breaches of the building contract through defective work and intentional deviations from the plans and specifications, the plaintiff was entitled to recover the cost of remedying practicably remediable breaches plus the amount of the diminution, due to breaches not practicably remediable, in the fair market value which the dwelling would have had if it had been properly built in accordance with the plans and specifications, less a portion of the contract price which the plaintiff had not paid to the defendant.   [74–75]

A landowner entitled to recover damages in an action against a contractor on an unliquidated claim for breach by the defendant of a contract between the parties for construction of a dwelling on the plaintiff's land was, on the record, entitled to interest on the damages only from the date of the writ.   [75]

CONTRACT.  Writ in the Superior Court dated July 15, 1959.

The action was heard on an auditor's report by *Cahill, J.*

*Maurice M. Goldman* for the defendant.

*John Kimball, Jr.,* for the plaintiffs.

CUTTER, J.  Concannon and his wife made an oral agreement with Galanti by which Galanti, for $17,800, was to build a house for the Concannons in accordance with plans and specifications.  In various respects Galanti intentionally deviated from the plans.  His work and that of "his employees was, for the most part, not good."

The Concannons took occupancy of the house in mid-July, 1958, "and from that time, frequently brought to . . . [Galanti's] attention" defective work.  They gave to him written notice of defective work on two occasions (November 12, 1958, and March 26, 1959).  By September 7, 1958, the Concannons had paid Galanti $16,435 on the contract price of $17,800 and on September 29, 1958, Leo Concannon gave Galanti a promissory note for $1,078.95, the balance of the price less certain agreed adjustments ($286.05).  The total of the payments, the note, and the adjustments was equal to the agreed price.  Concannon, however, did not pay the note when it became due on December 29, 1958.

The Concannons brought an action to recover for breach of the contract, and Galanti declared in set-off, alleging among other things the nonpayment of the note. The case was referred to an auditor, whose findings of fact were to be final. The auditor, in addition to finding the subsidiary facts already stated, made the following findings: (1) The fair market value of the house, if completed in accordance with the plans and specifications, would have been $20,000, but, as in fact built by Galanti, was $10,000. (2) The "fair value of [the] labor and materials to complete the work under the . . . contract and to correct defective workmanship, which can be corrected, . . . [is] $5,000." (3) The "diminution of . . . market value . . . because of defective work which cannot be economically . . . corrected . . . [is] $5,000."

The auditor found generally for the Concannons in the sum of $10,000 for breach of the contract. On the counts of the declaration in set-off, he found for the Concannons, either because of failure of proof by Galanti or because Galanti had intentionally deviated from the contract. The Concannons' motion for judgment on the auditor's report was allowed. The case is here on Galanti's appeal.

1. Galanti attempts, apparently for the first time on appeal (cf. *Donahue* v. *Dal, Inc.* 314 Mass. 460, 463; *Foster* v. *Everett,* 334 Mass. 14, 18), to assert the defences of compromise and settlement or accord and satisfaction which were not specifically pleaded. See *Marr* v. *Heggie,* 317 Mass. 286. See also *Grinnell* v. *Spink,* 128 Mass. 25, 26. "[N]either use and occupation nor payment in whole or part as matter of law waives the right of the owner to obtain damages for failure to comply fully with the terms of a contract to build a structure upon that owner's land." *Barton* v. *Morin,* 281 Mass. 98, 99–100. Although taking possession of the building and payment may be significant events to be considered in determining whether there has been a compromise, settlement, or accord and satisfaction, it remains a question of fact whether the Concannons in some manner have relinquished their rights in respect of

damages. See the *Barton* case, at p. 100. See also *Russo* v. *Charles I. Hosmer, Inc.* 312 Mass. 231, 234; *Lipson* v. *Southgate Park Corp.* 345 Mass. 621, 626. Upon this auditor's report with facts final, it was the duty of the trial judge, and it is our duty, to enter a correct judgment on the facts reported. See *Abrams* v. *Reynolds Metals Co.* 340 Mass. 704, 705; *Pietrazak* v. *McDermott,* 341 Mass. 107, 109. The subsidiary facts do not require, if indeed they permit,. the conclusion that the Concannons relinquished their claims against Galanti. The auditor's ultimate findings and conclusions show that he intended no such interpretation of his subsidiary findings. We conclude that no compromise, settlement, or accord and satisfaction was made.

2. The Concannons were entitled to damages sufficient to put them in as good a position as if there had been no breach and the contract had been completed. See *Walsh* v. *Cornwell,* 272 Mass. 555, 563–564; Williston, Contracts (2d ed.) § 1363; McCormick, Damages, § 168. See also *F. A. Bartlett Tree Expert Co.* v. *Hartney,* 308 Mass. 407, 411–412; Restatement: Contracts, § 346; Corbin, Contracts, § 1089; annotation, 76 A. L. R. 2d 805, 810–815. Professor Williston states the rule (at pp. 3825–3826), "Where the contractor fails to keep his agreement, the measure of the employer's damages . . . is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance . . . . If the defect is not thus remediable, damages are based on the difference between the value of the defective structure and that of the structure if properly completed." As to that $5,000 of the damages, found by the auditor to be the cost of correcting work which can be corrected, the first part of the rule just stated governs. See *DiMare* v. *Capaldi,* 336 Mass. 497, 502, which (see the master's findings at pp. 499–500, 501–502) dealt with remediable defects. The second part of the rule entitles the Concannons to recover the $5,000 diminution in market value of the house caused by defective work which cannot be economically corrected.

The auditor's finding of total damages for Galanti's breach of contract in the sum of $10,000 thus was warranted. The Concannons, however, should not be paid more than the full equivalent of their bargain. They should have had a house worth $20,000 for a payment of $17,513.95. They should not receive the equivalent of $20,000 for a payment of only $16,435. Thus their recovery must be reduced by the portion of the adjusted price which has not been paid, the amount represented by the unpaid note for $1,078.95. See *Ficara* v. *Belleau,* 331 Mass. 80, 82; *DiMare* v. *Capaldi,* 336 Mass. 497, 502.

3. The order for judgment for the Concannons is to be modified to allow a total recovery by them of $8,921.05 with interest from the date of the writ. See *Palmer* v. *Stockwell,* 9 Gray, 237, 239. The claim was unliquidated and the auditor's report reveals no such certainty about the extent of the claim prior to the date of the writ as to make appropriate interest from any earlier date. See *Vaughan* v. *Lemoine,* 330 Mass. 83, 86–87; *Davidson* v. *Robie,* 345 Mass. 333, 341–342; Corbin, Contracts, §§ 1048–1049, 1051. Cf. *Chas. T. Main, Inc.* v. *Massachusetts Turnpike Authy.* 347 Mass. 154, 168; Restatement: Contracts, § 337 (a). As so modified the order for judgment is affirmed.

*So ordered.*