OPINION OF THE COURT
Ira Gammerman, J.
In May 1975, plaintiff, the Italian Economic Corporation (TIEC), retained defendants Community Engineers, Inc. (Community), acting through defendant Gardner, an architect, to provide architectural services in connection with a planned addition to plaintiff’s building at 25 West 51st Street, New York City.[1]
In developing the architectural design for the building addition Gardner engaged the services of two engineers, James John Romeo, a structural engineer who submitted the structural design and plans, and Martin Zacharius, a mechanical engineer who designed the mechanical plans for the project’s ventilation, heating, air conditioning and fire fighting equipment.
Because of its dissatisfaction with certain aspects of the building addition, plaintiff, subsequent to the completion of construction in 1979, engaged the services of consultants unrelated to defendants Community and Gardner. The new consultants concluded that both the structural design and the mechanical design were defective in the following respects: (1) the structural design provided for unusually light and shallow construction unsuitable for plaintiff’s use and failed to provide the wind bracing required by the applicable provisions of the New York City Building Code and (2) the mechanical design failed to provide for adequate air conditioning and circulation and appropriate exhaust for the fire fighting gas system. Plaintiff instituted this action seeking damages for negligence and breach of contract, naming as defendants Community, Gardner, James John Romeo, John Tudda, a Building Department expediter, and Martin Zacharius, as well as others. Prior to trial, the claims against Romeo and Tudda were settled for $475,000 and the claim against Zacharius for $135,000.
*212 The action proceeded to trial against defendants Community and Gardner. Proof was offered with respect to the negligence of the structural engineer (Romeo) in preparing a defective structural design and the negligence of the architect (Gardner) in approving that design. No testimony was offered that Zacharius, the mechanical engineer, departed from the accepted standards of his profession in connection with his mechanical design and plans.
At trial, it was testified that the cost of remedying the structural defects was approximately $750,000 and that, in addition, relocation expenses would be incurred during the period of structural repair. There was also proof of damages relating to the diminution of the value of the building because of the permanent loss of space and windows resulting from the necessary structural repairs, a loss that could have been avoided had the original structural design been proper.
Testimony established the cost of correcting the mechanical defects, i.e., the air-conditioning and ventilation systems and the fire fighting gas exhaust at approximately $122,000.
The following questions were submitted to the jury with respect to the claimed structural design defects insofar as they related to the potential liability of the defendants Community, Gardner, Romeo, and Tudda.[2]
1. Was Mr. Gardner negligent in approving the structural design and plans for the addition to plaintiff’s building in that such design and plans were not appropriate for the use to which the building addition was to be put?
YES_NO_
If the answer to question one is "Yes” answer question two. If the answer to question one is "No” omit question two.
2. Was that negligence a proximate cause of injury or loss to plaintiff?
YES __NO_
3. Was Mr. Gardner negligent in approving the structural design and plans for the addition to plaintiff’s building in that such design and plans did not provide for appropriate wind bracing?
YES_NO
*213 If the answer to question three is "Yes” answer question four. If the answer to question three is "No” omit question four.
4. Was that negligence a proximate cause of injury or loss to plaintiff?
YES_NO_
5. Was Mr. Romeo negligent in the manner in which he designed the addition to plaintiff’s building?
YES_NO_
If the answer to question five is "Yes” answer question six. If the answer to question five is "No” omit question six.
6. Wás that negligence a proximate cause of injury or loss to plaintiff?
YES_NO_
7. Was Mr. Tudda negligent in that he advised that with respect to wind bracing the pre-1968 Code could be used?
YES_„ NO_
If the answer to question seven is "Yes” answer question eight. If the answer to question seven is "No” omit question eight.
8. Was that negligence a proximate cause of injury or loss to plaintiff?
YES_NO_
The jury found Gardner and Romeo each 50% liable and no negligence on the part of Tudda. The following damages were awarded: $630,000 for structural repair, $350,000 for relocation expenses and $400,000 for diminution in the value of the building, for a total amount of $1,380,000.
Defendants Community and Gardner challenge the court’s trial rulings relating to Zacharius and raise other issues with respect to the effect of the Romeo and Tudda settlement, the computation of interest and the propriety of allowing damages for both structural repair and diminution in value. They also assert an indemnity claim against Romeo.
*214 THE EFFECT OF THE ZACHARIUS SETTLEMENT
Defendants argue that the damages awarded to plaintiff TIEC should be reduced by the $135,000 paid by Zacharius in settlement of the claims against him. There is, however, no basis for that reduction. Zacharius’ role was limited to the heating, ventilation, air conditioning and fire retardation design. His potential liability (or settlement contribution) would have impact only on the damages awarded to plaintiff for the loss flowing from the alleged defects in the mechanical design. Inasmuch as Zacharius’ settlement payment of $135,000 exceeded the proved damages resulting from the claimed breach of contract relating to that design, it was not necessary to submit to the jury any issue or questions with respect to the alleged defects in the air conditioning, heating, ventilation or fire retardation design.
General Obligations Law § 15-108 (a) applies only to person liable "for the same injury”. The verdict against defendants Gardner and Community and the damages awarded to plaintiff relate solely to the injuries flowing from the defects in the structural design, defects and damages for which Zacharius could not be held liable. Section 15-108 (a) is applicable to litigation in which a CPLR article 14 right of contribution arises. (County of Westchester v Becket Assocs., 102 AD2d 34 [2d Dept 1984], affd 66 NY2d 642 [1985].) Here, neither Gardner nor Community had a right of contribution against Zacharius because Zacharius could not be held liable for the defects and damages which form the basis of the award.
To reduce the jury verdict by the amount of the Zacharius settlement would give the defendants a credit to which they are not entitled. (Sabella v County of Nassau, 114 Misc 2d 119 [Sup Ct, Nassau County 1982].) Defendants’ argument that General Obligations Law § 15-108 mandates the application of any settlement moneys to the "claim” of the releasor is without avail. For a defendant to be entitled to credit for the settlement amount it must be legally possible that a defendant and the settling party can be held jointly or severally liable to the plaintiff for the same damages. Here, the alleged wrongful conduct of Zacharius, although relating to the same building, would result, if established, in distinctly different and separable damages from those for which defendants were held liable by the jury. (Carrols Equities Corp. v Villnave, 76 Misc 2d 205 [Sup Ct, Onondaga County 1973], affd 49 AD2d 672 [4th Dept 1975].)
*215 THE EFFECT OF THE ROMEO-TUDDA SETTLEMENT
Prior to trial the claims against Romeo and Tudda were settled for a total of $475,000 with no apportionment between the two settling defendants. In paying the settlement amount the insurance carrier for those parties, apparently for its own bookkeeping purposes, issued two checks, one for $285,000 allocated to Romeo and another for $190,000 allocated to Tudda. Defendants Community and Gardner urge that they are entitled to credit for both the $190,000 payment allocated to Tudda and the 50% equitable liability of Romeo found by the jury.
The terms of the negotiated settlement, however, are clear and unequivocal. One total amount of $475,000 was to be paid by Tudda, JRW Consultants (Tudda’s company) and Romeo in return for plaintiffs release without any agreement on allocation. It would be manifestly unfair to penalize plaintiff by reducing the total jury award by an additional $190,000 because an insurance carrier unilaterally chose to allocate this amount as Mr. Tudda’s share of the settlement. Plaintiff played no part in this allocation and is not bound by it.
Had plaintiff negotiated separate settlements with Tudda and Romeo, obviously, a different result would obtain. In that event defendants would be entitled to credit for both the 50% equitable liability of Romeo (as found by the jury) and the $190,000 settlement. For the reasons set forth above, Romeo and Tudda must be treated, in essence, as one settling defendant. (See, Mead v Bloom, 94 AD2d 423 [4th Dept 1983].)
Thus, in accordance with General Obligations Law § 15-108 (b), the total award will be reduced by 50% or $690,000, since this amount is greater than the Romeo-Tudda settlement of $475,000.
COMPUTATION OF INTEREST
It is not necessary to determine if interest is to be computed before or after apportionment inasmuch as the same results would be obtained. The only issue remaining regarding interest is the date from which it is to be calculated. CPLR 5001 (b) states that interest is to be computed from "the earliest ascertainable date the cause of action existed”. This section further provides that where damages occurred at different times the interest shall be computed "from a single reasonable intermediate date.” It was stipulated at trial that the approximate date of substantial completion was July 20, 1979. Indeed, there was testimony that defects began appear *216 ing several months prior to that date in late 1978. July 20, 1979, would, therefore, appear to be a "reasonable intermediate date” from which to compute the interest.
Defendants argue that the interest on certain items of damages, "relocation costs” and "diminution in value” should be computed from a date later than that on which the negligence occurred. At trial, however, the defendants insisted that the testimony relating to relocation costs be limited to the 1979 costs. Similarly, the amount for "diminution in value” was reduced by plaintiffs expert from $700,000 to $550,000 to set that amount of damages as of 1979. Having successfully urged at trial that the relocation and diminution in value damages be established based on 1979 costs and rentals, defendants cannot now maintain that interest on those two items be computed from a date later than 1979. Plaintiff is entitled to interest on all items of damage from July 20, 1979.
CAN PLAINTIFF RECOVER BOTH COST OF REPAIR AND DIMINUTION IN VALUE?
Defendants urge that plaintiffs damages are limited to the lesser amount of either the cost of repair or the diminution in value of the building. (Hartshorn v Chaddock, 135 NY 116 [1892].) The court is well aware that this is the usual measure of damages for a breach of a construction contract or for architectural malpractice and is unable to find any controlling precedent in which the unusual facts of the instant case occurred. Here, proof established that the structural repairs were necessary for the building to comply with the New York City Building Code and to be suitable for the use intended. In addition, the structural repairs will, because of the initial defective design, result in loss of both floor space and windows. If plaintiff is to be made whole, that is, to have what it contracted for or its equivalent, it is entitled to recover both the cost of repairing the building and the resultant diminution in its value subsequent to the repair.
ARE DEFENDANTS ENTITLED TO INDEMNITY AGAINST ROMEO?
For defendants Community and Gardner to be entitled to seek indemnity from Romeo, they must be found vicariously liable for his wrongdoing, having committed no actual wrong themselves. (County of Westchester v Becket Assocs.,. supra.) Gardner and Community, however, were not found liable because of a derivative liability based on their relationship to Romeo. The jury found both Gardner and Romeo negligent *217 and, further, that each was equally liable for the damages proximately caused by that negligence. That jury finding precludes a right of indemnity.
Thus, the clerk is directed to enter a judgment in favor of plaintiff TIEC against defendants Community qnd Gardner in the amount of $690,000 with interest from July 20, 1979.

. The building is occupied by both TIEC, a wholly owned subsidiary of coplaintiff Banca Nazionale Del Lavoro (Banco) and Banca as TIEC’s tenant. At the conclusion of the trial it was determined that only TIEC was entitled to recover.

. No questions were submitted with respect to the claimed mechanical design defects of defendant Zacharius for the reasons discussed below. Inasmuch as defendant Community was vicariously liable for defendant Gardner’s negligence, no questions were submitted with respect to it.