John MARCHESSEAULT

v.

Philip JACKSON d/b/a Phil Jackson & Son.

Supreme Judicial Court of Maine.

Submitted on Briefs June 15, 1992.

Decided July 30, 1992.

Elliott L. Epstein, Isaacson & Raymond, Lewiston, for plaintiff.

Anthony K. Ferguson, Fales & Fales, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Defendant Philip Jackson, d/b/a Phil Jackson & Son, appeals from a judgment of the District Court (Lewiston, *O'Rourke, A.R.J.*), affirmed by the Superior Court (Androscoggin County, *Delahanty, C.J.*), awarding damages in the amount of $20,786 to plaintiff John Marchesseault. On appeal, Jackson asserts that the District Court erred by admitting certain expert testimony and employed an inappropriate measure of damages resulting in an excessive award. Jackson further contends that Marchesseault failed to mitigate his damages and that the court erred by not taking such failure into account. We find no merit in these contentions and affirm the judgment.

The facts developed at trial may be summarized as follows: In the summer of 1989, Marchesseault entered into an oral agreement with Jackson for the construction of a foundation for Marchesseault's new home in West Minot. Jackson agreed to build the foundation and a frost wall for the garage and to pour concrete slabs for the house and garage. Marchesseault agreed to pay Jackson $5800 for labor and materials. Jackson performed in an unworkmanlike manner. Among other defects, the foundation walls were out of square, out of plumb, bowed, filled with "honeycombs," uneven, and of unequal heights. Unsat-

isfied with Jackson's performance and his proposed remedies for the faulty foundation, Marchesseault refused to let Jackson complete the job. At this point, Marchesseault had already paid Jackson (or material suppliers) $5069 of the total $5800 contract price. The concrete pads for the garage and cellar had not yet been poured, nor had the garage frost wall been constructed.

After seeking the opinion of a construction consultant as to whether he should destroy the foundation and have it rebuilt or remedy the major structural defects and go ahead with the construction of the house,[1] Marchesseault opted to remedy the major defects and hired another contractor to complete the work left unfinished by Jackson. Marchesseault spent $7517 to repair the foundation, cosmetically conceal the interior and exterior flaws, build the garage frost wall, and have the concrete slabs poured.

In September 1989, after the home was completed, Marchesseault filed a complaint in District Court alleging that Jackson breached the parties' contract, performed in an unworkmanlike manner, and acted negligently in the construction of the foundation. Marchesseault sought damages for the costs he expended to repair the foundation and complete the job, and the resulting diminution in value of the home subsequently set upon the foundation. During the one-day trial, plaintiff's expert, Richard Potvin, a real estate broker, testified over Jackson's objection that the visible flaws in the foundation and cellar of the home caused a reduction in the property's value on the order of 15%, or about $20,875. The court found that Jackson did not fully perform his obligations under the contract and acted in a negligent and unworkmanlike manner. The court awarded Marchesseault the $7517 expended to repair and complete the job plus $14,000 representing the "diminution in the fair market value of the house by reason of the loss of living space, the change in ceiling height, the dampness, the visual impact, the humidity, the water seepage, and the uneven ceiling." The court offset $731 (the unpaid balance on the contract) and ordered that judgment be entered for Marchesseault and against Jackson for $20,786.

Jackson appealed the judgment to the Superior Court, which affirmed the District Court. Jackson now seeks review in this court.

## I.

Jackson first contends that the District Court erred by admitting the opinion testimony of Marchesseault's expert, Richard Potvin. Jackson objected to the admission of this testimony on the grounds that Potvin was not properly qualified to render an expert opinion on the diminution in value of the house and further, that Potvin had an insufficient basis for his opinion. The determination by the trial court whether a witness possesses the requisite qualifications to form an expert opinion is factual and will be reviewed on appeal for clear error. *State v. Libby,* 153 Me. 1, 8, 133 A.2d 877 (1957) (decision whether expert qualified conclusive unless error of law clearly appears); *see* M.R.Evid. 104(a) ("preliminary questions concerning the qualification of a person to be a witness ... shall be determined by the court."). The record shows that Potvin has been a licensed real estate broker in Maine for over thirteen years, has degrees in business and real estate management, and is president and owner of a real estate agency in Androscoggin County. Potvin has experience in property valuation and real estate market analysis. Potvin inspected and photographed the Marchesseault home paying particular attention to the foundation and basement. He testified that the numerous visible defects would adversely affect the market value of the home, and using a comparable market sales analysis,

---

1. The consultant estimated that it would cost about $3000 to demolish the foundation and cart it away, and about another $6000 to have it rebuilt. Another contractor testified that it would cost about $5200 to rebuild the foundation walls anew. It is not clear from the record whether either contractor's estimate included the pouring of the concrete slabs and construction of the garage frost wall.

gave his opinion that, with the faulty foundation, the value of the Marchesseault home was diminished by $20,875. We discern no error in the admission of this testimony. The District Court could properly find that Potvin was sufficiently qualified and had sufficient information on which to base his opinion, even though it found the value of the home diminished by an amount less than did Potvin.

## II.

Jackson next contends that the District Court erred by awarding Marchesseault both cost of repair damages and damages representing a diminution in value of the home. As a general rule, damages for defective performance under a construction contract may be measured either by the reasonable costs of reconstruction and completion in accordance with the contract, or by the diminished value to the owner of the building by reason of the defects. *Parsons v. Beaulieu*, 429 A.2d 214, 217 (Me.1981); 5 A. Corbin, *Contracts* § 1089 (1964). We are unpersuaded by Jackson's assertions that each of these measures is, as a matter of law, an alternative exclusive of the other and that it is always error to award some combination of the two.[2]

Although in the usual case the injured party is awarded either costs of repair or diminution in value damages, *see Smith v. Urethane Installations, Inc.*, 492 A.2d 1266, 1269 (Me.1985); *Wimmer v. Down East Properties, Inc.*, 406 A.2d 88, 92 (Me.1979), "[e]xisting remedial rules are not so dogmatic and inflexible as to prevent the court from varying the remedy to suit the special facts." 5 A. Corbin, *Contracts* § 1090. In many cases the repairs fully correct the defects caused by the contractor's breach and the award of damages based on the cost to complete or repair makes the injured party whole. In other cases, however, notwithstanding remedial measures undertaken by the injured party, there remains a diminution in value of the property. In such a case, awarding only the costs of remedying the defects will not fully compensate the owner for the damages suffered by him.[3] .The overriding purpose of an award of compensatory damages for a breach of contract is to place the plaintiff in the same position as that enjoyed had there been no breach. *Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646, 654 (Me.1979). Subject to the limitations of avoidability and unforeseeability, an injured party is entitled to recover for all loss actually suffered as a result of the breach. *Restatement (Second) of Contracts* § 347 comment c (1981).

In *Maine Civil Remedies*, the authors state:

> In some situations, the owner will, even after retaining another contractor to complete the work, still not have as good a structure as she had contracted for. The owner could then presumably claim the difference in value between what was contracted for and what was actually received, in addition to the cost of completing the work.

Horton & McGehee, *Maine Civil Remedies* § 12.6–2.2(b) at 12–21 (1991). This case presents such a situation. Marchesseault paid to have another contractor complete the job and attempted to repair the structural defects in the foundation. While the repairs were not a total failure, the foundation remained in "less than contracted for"

---

**2.** Jackson does not quarrel with the court's award of costs to complete performance and remedy the defects, but rather contends that factoring in loss in value damages was improper.

**3.** We have stated that the standard measure of damages for defective performance under a construction contract is the difference in value between what was bargained for and what was received. *Wimmer v. Down East Properties, Inc.*, 406 A.2d 88, 92 (Me.1979). We have also stated that in situations where a builder fails to perform all of the work required by the contract, the owner may be entitled to reasonable costs to complete the job and remedy the defects. *Id.* In the instant case, Jackson failed to perform fully under the contract, and to the extent he did perform, he did so in an unworkmanlike manner. The award in this case of both costs of repair and the remaining diminution in value is not inconsistent with what we have expressed to be the "standard measure" of damages.

condition. Because a foundation is built specifically to support a house, it is foreseeable that a faulty foundation would diminish the value of the house. *See Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 696 (Me.1986); *Maine Civil Remedies* § 12.6–2 at 12–24 (damages must be foreseeable). In the circumstances here present, the resulting diminution in the value of the house is recoverable by the plaintiff.

Other courts have had occasion to approve the award of both measures of damages in certain circumstances. *See Meyer v. Alexander & Baldwin, Inc.*, 56 Haw. 195, 532 P.2d 1007, 1011 (1975); *Concannon v. Galanti*, 348 Mass. 71, 202 N.E.2d 236, 238–39 (1964); *Gerodetti v. Broadacres, Inc.*, 363 So.2d 265, 268 (Miss.1978); *Italian Econ. Corp. v. Community Eng'rs*, 135 Misc.2d 209, 514 N.Y.S.2d 630, 635 (Sup.Ct.1987); *Stern v. Schlafer*, 244 Wis. 183, 12 N.W.2d 678 (1944). In *Italian Econ. Corp.*, a New York court awarded the plaintiff both the costs to repair defendant's defective work and the diminution in the value of the building, stating:

> If plaintiff is to be made whole, that is, to have what it contracted for or its equivalent, it is entitled to recover both the cost of repairing the building and the resultant diminution in its value subsequent to the repair.

*Italian Econ. Corp.*, 514 N.Y.S.2d at 635. Similarly, if Marchesseault is to be made whole, he is entitled to recover his expenditures associated with completing the job and remedying the major defects in the foundation and the remaining diminution in value of the house despite his efforts to repair Jackson's faulty work. We find no error in the District Court's award on the facts of this case.

### III.

Finally, Jackson asserts that Marchesseault, by going ahead with the construction of the house, failed to mitigate his damages and that the District Court erred by not taking account of such failure in its damage award. As a general rule, a plaintiff has a "duty"[4] to use reasonable efforts to mitigate his or her damages. *Lindsey v. Mitchell*, 544 A.2d 1298, 1301 (Me.1988). Mitigation is an affirmative defense, however, and it is incumbent on the defendant to show that a plaintiff failed to take reasonable steps to mitigate. *Id.* Jackson made no such showing. Rather than destroying the foundation and starting anew, Marchesseault decided to hire another contractor and remedy the existing defects. Although this was not a wholly successful endeavor, the District Court was not compelled to find that Marchesseault's decision was wholly unreasonable at the time it was made.[5] While "avoidability" is a limitation on damages, *see Restatement (Second) of Contracts* § 350(1), the injured party is not precluded from recovery by that rule if reasonable, though unsuccessful, efforts are made to avoid loss. *Id.* at § 350(2).

The entry is:

Judgment affirmed.

All concurring.

---

**4.** Commentators have suggested that reference to a "duty" to mitigate is misleading as no liability is incurred by failing to take such steps. *See* E.A. Farnsworth, *Contracts* § 12.12 at 859 (1982).

**5.** The record shows that Marchesseault planned to build the house himself and had set aside a specific amount of time away from his other work to do so. Marchesseault testified that at the time, given the constraints imposed by his other responsibilities, the better course of conduct was to repair and complete the construction rather than demolish the foundation and start over. We cannot say that the District Court was compelled to find that Marchesseault's decision was unreasonable.