Cecil Amos DOUGHTY

v.

Ethelyn Doughty SULLIVAN

v.

Neil DOUGHTY.

Supreme Judicial Court of Maine.

Argued March 3, 1995.
Decided July 7, 1995.

---

1114

John P. McVeigh (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for Ethelyn Sullivan.

Stephen C. Chute (orally), Chute & Associates, Portland, for Neil Doughty.

Daniel W. Boutin (orally), Jewell & Boutin, Portland, for Cecil Amos Doughty.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Ethelyn Sullivan (Ethelyn) appeals from the judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) affirming the judgment entered in the District Court (Portland, *Rogers, J.*) in favor of Cecil Amos Doughty (Amos) on his complaint requesting a writ of replevin and damages for Ethelyn's wrongful conversion of an 18-foot Pointer boat which Amos allegedly purchased from Neil Doughty (Neil). Ethelyn also appeals from a judgment entered in Neil's favor on her third-party complaint alleging that Neil owed her $1,000. We vacate both judgments.

## Background

The record reveals that Bernard Doughty loaned his son, Neil, $1,000 to enable Neil to purchase an 18-foot Pointer boat. To evidence the loan, Neil gave his father a signed "receipt" which stated, "Received from Bernard Doughty $1,000 for one 18-foot Pointer and 45 H.P. motor." Neil Doughty signed this receipt. Bernard believed the receipt gave him a security interest in the boat. Neil testified that he did not intend to give his father a security interest in the boat. He simply wanted his father to have the boat if something happened to him while he was at sea.

Neil stored the boat during the winter of 1989–1990 in the yard of John and Ethelyn Sullivan, his sister. Although Neil used the boat a few times, during the summer of 1990, seawater disabled the engine and Neil left the boat on its mooring in Chandler's Cove. According to John Sullivan, he towed the boat from Chandler's Cove to Bennett's Beach in early October 1990 where he left the boat on the beach for a couple of weeks. Bernard testified that he instructed John to haul the boat back to the Sullivans' yard because he was concerned that the boat would be destroyed over the winter unless it was removed from the beach. Sullivan and a friend testified that they hauled the boat to the Sullivan's yard in late October or early November. Bernard believed that he had a right to repossess the boat because Neil had not yet repaid the loan. On November 19, 1990, Bernard signed a document which stated: "As of this date I transfer my ownership and claim to the note for $1000.00 from Neil Doughty, for the boat (18' Pointer) and 45 HP Chrysler motor as yet unpaid to Ethelyn L. Sullivan." The document was witnessed and signed by a family friend.

During this same time period, Neil accepted an offer by Amos to buy the boat for $500. On November 21, 1990, Amos gave Neil a check for $500 which Neil cashed that same

day. Both Neil and Amos testified that, contrary to the Sullivans' contentions, the boat was still lying on the beach when the sale occurred. Neil could not recall how the boat got from the mooring in Chandler's Cove to Bennett's Beach. Amos testified that he had no idea that someone else claimed an interest in the boat. Sometime after Neil sold the boat to Amos, Amos discovered that the boat was in the Sullivans' yard and he asked Ethelyn to return it to him as he was now the owner. Ethelyn refused, asserting that Bernard owned the boat.

In December 1990, Amos decided that he could not engage in commercial lobstering during 1991 because Ethelyn would not return the boat that he had intended to use. Amos did not attempt to replace the boat until 1992, when he purchased another boat for $1,000.

Amos filed a complaint on July 6, 1992 against Ethelyn, alleging that she had wrongfully converted the boat after he purchased the boat from Neil. Amos sought a writ of replevin pursuant to 14 M.R.S.A. §§ 7301–7312 (1980) to obtain possession of the boat and damages for Ethelyn's wrongful conversion. As a part of his damages claim, Amos sought lost profits that he sustained when he was unable to use the boat during the 1991 lobster season. At trial, it was stipulated that Amos earned $3,830 from lobster fishing in 1992. Amos also sought reimbursement for the boat he purchased in 1992 to replace the boat converted by Ethelyn. In total, Amos claimed damages in excess of $8,500. At the time he filed his complaint, Amos did not attach a bond or an affidavit to support his request for a writ of replevin.

Ethelyn answered Amos's complaint by denying Amos's claim of title and claiming title in herself by virtue of Bernard's assignment to her of his right to enforce the debt and the security interest. Ethelyn contended that the receipt evidencing the loan by Bernard to Neil represented a security interest in the boat which was perfected when Bernard repossessed the boat. Furthermore, Ethelyn contended that Amos had notice that someone claimed a security interest in the boat. Amos, therefore, did not qualify as a bona fide purchaser. In the event that her security interest was held to be unperfected, Ethelyn filed a third-party action for money lent against Neil. Ethelyn also charged Neil and Amos with creating a contrived sale to deprive her of her interest in the boat.

Prior to the trial, Ethelyn filed a motion to dismiss Amos's complaint for failure to file the pleadings required by M.R.Civ.P. 64 to obtain a pre-judgment writ of replevin.[1] Ethelyn contended that 14 M.R.S.A. §§ 7301–7312 and M.R.Civ.P. 64 provided a writ of replevin as a pre-judgment remedy only. Amos attempted to cure his failure to conform to M.R.Civ.P. 64 by filing a motion for a writ of replevin and a personal bond for $1,000 and an affidavit before trial.

After a trial, the District Court concluded that it had subject matter jurisdiction pursuant to 14 M.R.S.A. §§ 7301–7312 (1980), and that Amos was entitled to seek a post-judgment writ of replevin without first seeking a pre-judgment writ of replevin. The court further decided that regardless of whether the receipt signed by Neil evidenced a valid security interest, Bernard had not perfected the interest by the time Amos bought the boat from Neil because it was more likely than not that the boat was in Chandler's Cove at the time of the purchase and not in Bernard's possession. The trial court concluded that Amos was a bona fide purchaser for value and was entitled to possession of the boat and entitled to $3,680.10 for damages he sustained when Ethelyn converted the boat and prevented him from lobster fishing in 1991. Accordingly, a judgment was entered in favor of Amos.

---

1. M.R.Civ.P. 64(c) provides in pertinent part:
 A replevin action may be commenced only by filing the complaint with the court, together with a motion for approval of the writ of replevin and the amount of the replevin bond. The motion shall be supported by affidavit or affidavits setting forth specific facts sufficient to warrant the required finding ... Except as provided in subdivision (h) of this rule, the motion and affidavit or affidavits with notice of hearing thereon shall be served upon the defendant in the manner provided in Rule 4 at the same time the summons and complaint are served upon that defendant.

The trial court entered a separate judgment in favor of Neil on Ethelyn's third-party complaint. Although the trial court found that Bernard loaned $1,000 to Neil, it concluded that Bernard had forgiven the loan, as he had forgiven other loans to his children. The court further found that Neil twice attempted to pay his father $500 as installment payments but that Neil's efforts were rejected by Bernard. From these judgments, Ethelyn appeals.

## Jurisdiction to Issue a Post–Judgment Order of Replevin

■■■ Ethelyn first contends that because Amos had failed to replevy the boat before the action was tried, the District Court erroneously concluded that it had jurisdiction pursuant to 14 M.R.S.A. §§ 7301–7312 to issue a writ of replevin after a judgment had been entered.[2] According to Ethelyn, the statute provides a pre-judgment remedy only. Ethelyn further contends that even if Amos was permitted to cure his failure to request a pre-judgment writ of replevin, Amos still did not provide a bond "with sufficient sureties." *Ford New Holland, Inc. v. Thompson Machine, Inc.*, 617 A.2d 540 (Me. 1992) (holding personal bond insufficient to satisfy statute). Hence, the District Court was without subject matter jurisdiction to hear Amos's action in replevin.

■■■ Amos responds that the bond requirement is intended merely to provide security to the defendant in a replevin action when the plaintiff seeks a pre-judgment writ of replevin. Because he was willing to wait until after a judgment was entered before he obtained possession of the boat, Amos argues that requiring him to post a bond is superfluous. According to Amos, the filing of a complaint confers jurisdiction on the District Court to hear an action in replevin pursuant to 14 M.R.S.A. § 7301, rather than the filing of a pre-judgment writ of replevin. After a careful review of the laws of other states and our own statute, we conclude that 14 M.R.S.A. §§ 7301–7312 confers jurisdiction on the District Court to hear an action in replevin only if the plaintiff has already replevied the property through the issuance of a pre-judgment writ of replevin.

Replevin is one of the oldest legal remedies available under the common law. Historically, replevin lay to recover immediate possession of a specific chattel as compared with other common law actions for trespass or conversion which lay to recover damages for the wrongful taking of a chattel. Cobbey, *A Practical Treatise on the Law of Replevin*, § 17 (2d ed. 1900). Replevin sought only to establish the right to possession and not the right to legal title. The common law action of replevin could be commenced only by the issuance of a writ of replevin and seizure of the property which was deemed necessary for the court to obtain jurisdiction over the action. *Hart v. Moulton*, 104 Wis. 349, 80 N.W. 599, 600 (1899).

The plaintiff would apply for a writ of replevin from the court by supplying an affidavit alleging the right to immediate possession of the goods currently in the wrongful possession of a third party.[3] If the affidavit satisfied the common law formalities, the court would issue the writ directing the sheriff to seize the chattel and to deliver the same to the plaintiff. Before the sheriff could serve the writ and seize the property, however, he had to obtain a bond from the plaintiff for twice the value of the goods sought to be replevied.[4] Upon receiving pos-

2. Although the trial court determined that Amos was entitled to a writ of replevin, the record reveals that the trial court never ordered the issuance of a writ. Ordinarily, we would decline to address the merits of an issue in the absence of a final judgment. This case, however, requires us to determine whether the trial court had any authority to issue a post-judgment writ of replevin. Without that determination, the trial court might think its only error was the failure to order the issuance of the writ, rather than its conclusion that it had the authority to order the issuance. For the sake of judicial economy, therefore, we decide this case as though a final judgment had issued.

3. The affidavit and bond were the foundation of the court's jurisdiction. *Hecklin v. Ess*, 16 Minn. (Gil.) 38, 40 (1870); Cobbey at § 525, 529. The affidavit also distinguishes the action in replevin from an action in case or trover. Cobbey at § 527.

4. The bond served multiple purposes. First, it insured that the plaintiff would timely seek a final judicial disposition of his claim after having

session, the plaintiff would bring the action in replevin seeking a judicial determination of his right to possession and any damages incurred by the defendant's wrongful retention of the chattel. Hence, replevin was a unique common law action that entitled a plaintiff to a prejudgment seizure of the chattel, leaving the merits of the plaintiff's claim of right to be tried later.

In some states the common law replevin action was eventually subsumed by a broader statutory action, commonly called an action to recover a chattel, in which a writ of replevin is but one remedy available to the plaintiff and not essential to commencing the action.[5] In these states, therefore, replevin is no longer a distinct cause of action and the writ of replevin has become an appendage to another action.

In New York, for example, an action to recover a chattel pursuant to statute replaced the common law actions of replevin and detinue. *Stone v. Church*, 172 Misc. 1007, 16 N.Y.S.2d 512, 515–16 (1939). The court in *Stone* held that whereas previously an action in replevin was commenced by the writ, an action to recover chattel was commenced upon service of the summons and the court thereby secured jurisdiction of the action. *Id.* 16 N.Y.S.2d at 516. The statute provided that the plaintiff could secure immediate possession by obtaining a writ as one option available to the plaintiff and seize the property before the action was tried. The writ was deemed no longer essential to the court's jurisdiction, and became a provisional pre-judgment remedy within the broader action to recover a chattel. Thus, pre-judgment seizure was not required for the court to maintain jurisdiction over the action. *Id.*

Other states have also concluded that, pursuant to their statutes, a writ of replevin is merely ancillary to the statutory action to recover a chattel. *See e.g., Ah Leong v. Kee You,* 8 Haw. 416, 418–19 (1891) (delivery order is optional in action to recover personal property); *Catterlin v. Mitchell,* 27 Ind. 298, 299 (1866) (seizure order is optional and not necessary to prosecute action); *Batchelor v. Walburn,* 23 Kan. 733 (1880) (delivery order is ancillary to action to recover personal property); *Weisenberger v. Corcoran,* 275 Ky. 322, 121 S.W.2d 712, 714–15 (1938) (order of delivery is merely ancillary in action for recovery of specific personal property); *Clifford Banking Co. v. Bankhead,* 738 S.W.2d 948, 948–49 (Mo.App.1987) (pre-judgment possession unnecessary in replevin action); *Eads v. Stephens,* 63 Mo. 90, 92 (1876) (delivery order not essential in action for recovery of specific chattel); *Hoff v. Lester,* 25 Wash.2d 86, 168 P.2d 409, 413 (1946) (delivery order is provisional remedy and not essential in action to recover possession of personal property); *Hart v. Moulton,* 104 Wis. 349, 80 N.W. 599, 600 (1899) (immediate delivery is provisional in action to recover personal property). It is important to note, however, that these decisions reflect an interpretation of individual state statutes that specifically provided that a plaintiff may obtain pre-judgment possession as a provisional remedy within a larger cause of action.

Other states, interpreting their own statutes, have concluded that if the property were not seized pursuant to a writ prior to the court hearing the case, the action was transformed into an action in trover or conversion. In such actions, the plaintiff could seek only damages instead of possession. *See e.g., McArthur v. Oliver,* 60 Mich. 605, 27 N.W. 689, 691 (1886) (when property is not seized upon a writ, suit is personal action to recover value of chattel as if it were action of trover); *Philleo v. McDonald,* 27 Neb. 142, 42 N.W. 904, 905 (1889) (statute provides that when property not seized, action proceeds as one for damages only as action in trover); *Stone v. Hopkins,* 58 Tenn. 190,

---

dispossessed the defendant of the chattel. Second, if the sheriff seized the chattel from the defendant without an adequate bond, he would be liable to the defendant for trespass. *Edgecomb v. Lawlis,* 126 Me. 550, 140 A. 182 (1928). Third, the bond was essential to give the court in rem jurisdiction over the chattel. Cobbey at § 665.

**5.** *See e.g.,* Ky.Rev.Stat.Ann. § 425.011 (Michie/Bobbs–Merrill 1992); Mo.Ann.Stat. § 533.010 (Vernon 1953); N.Y.Civ.Prac.L. & R. 7101 (McKinney 1980); Wash.Rev.Code.Ann. § 7.64.010 (West 1992).

192–93 (1869) (when property not seized, plaintiff may elect to continue action in case or detinue). Some states interpret their statutes to have retained the common law rule that the court has no jurisdiction to hear a replevin action until the property has been replevied. *See e.g., Gallup v. Wortmann,* 11 Colo.App. 308, 53 P. 247 (1898) (court does not acquire jurisdiction in replevin unless property seized); *Bush v. Hillman Land Co.,* 2 A.2d 133, 135 (Del.Ch.1938) (proceeding in replevin action presupposes a preliminary seizure); *St. Martin v. Desnoyer,* 1 Minn. (Gil.) 25, 28–29 (1858) (replevin action is proceeding *in rem* and seizure of property by writ essential to court's jurisdiction) *Troy Laundry Mach. Co. v. Carbon City Laundry Co.,* 27 N.M. 117, 119, 196 P. 745, 747 (1921) (replevin action may not be maintained unless property seized by service of writ); *Moseman Constr. Co. v. State Dept. of Transp.,* 608 A.2d 34 (R.I.1992) (replevin statute applies only when plaintiff seeks pretrial seizure of property pending a trial).

In Maine, replevin has been a statutory remedy at law since the replevin statute was first enacted in 1821 and copied from the Massachusetts replevin statute enacted in 1789.[6] *Seaver v. Dingley,* 4 Me. (Greenl.) 306, 315–16 (1826). 14 M.R.S.A. § 7301 (1980) provides in pertinent part:

> When goods unlawfully taken or detained from the owner or person entitled to the possession thereof, or attached on mesne process, or taken on execution, are claimed by any person other than the defendant in the action in which they are so attached or taken, such owner or person may cause them to be replevied.[7]

Maine's replevin statute further provides that before the officer may serve the writ, the plaintiff must provide a bond "with sufficient sureties" made out to the defendant for twice the value of the goods sought to be replevied. § 7303. If the plaintiff prevails in his action, "the plaintiff shall have judgment for his damages caused thereby and for his costs." § 7308. If the plaintiff does not prevail, section 7304 provides that "the defendant is entitled to a return of the goods, [and] he shall have judgment and a writ of return accordingly, with damages for the taking and costs." If the sheriff is unable to serve the writ of return, the court may grant a writ of reprisal by which the sheriff seizes plaintiff's personal property to cover the non-returned goods until the plaintiff restores the property which he replevied. § 7310. In the alternative, the defendant may resort to the replevin bond supplied by the plaintiff to recover the value of the goods replevied and any damages incurred from the plaintiff's wrongful retention. § 7311. Finally, an action for replevin may be heard in the District Court if the value of the goods does not exceed $30,000. 14 M.R.S.A. § 7302 (1980), 4 M.R.S.A. § 152(2) (1989).

There is no statutory language suggesting that a writ of replevin is merely ancillary to the underlying replevin action. Nor is there any provision that permits the plaintiff to forgo obtaining possession of the chattel until after a judgment on his action. Indeed, all of the provisions presuppose that the property has in fact been replevied before trial. As

---

6. Replevin is to be distinguished from equitable replevin which is a remedy to compel "the redelivery of property so withheld that it cannot come at to be replevied." *Farnsworth v. Whiting,* 104 Me. 488, 495, 72 A. 314 (1908). Equitable replevin is within the general principles of equity jurisdiction and is also authorized by statute. *Id.* at 493–495, 72 A. 314. Whereas the Supreme Judicial Court was originally vested with the statutory authority to order equitable replevin pursuant to 1883 R.S., ch. 160, the jurisdiction of the Superior Court and the District Court to order equitable replevin is now provided in 14 M.R.S.A. § 6051(11) (1980) and 4 M.R.S.A. § 152(5)(N) (Supp.1994). These provisions authorize the court to grant equitable relief when the chattel is "secreted or so withheld so that the goods or chattels cannot be replevied."

7. Although "to be replevied" is not defined in the statute, "to replevy" has been generally defined to mean "to redeliver goods which have been distrained, to the original possessor of them, on his giving pledges." *Kirk v. Morris,* 40 Ala. 225, 229–30 (1866). *See also,* Morris, *A Practical Treatise on the Law of Replevin in the United States,* at 5 (2d ed. 1878) (to replevy is "where a person distrained upon, applies to the sheriff or his officers, and has the distress returned into his possession, upon giving good security to try the right of taking it in a suit at law, and if that be determined against him, to return the cattle or goods once more into the hands of the distrainor") (citing Blackstone).

the Minnesota Supreme Court noted, in interpreting a statutory provision similar to section 7308 in our replevin statute: [8]

> Why only give [the plaintiff] damages for the detention of his goods, unless they were in fact replevied or delivered to him? Surely if they remained at the trial, with the defendant, or if he had destroyed or converted them, the plaintiff would be entitled to the value of the goods, as well as damages for their detention. The statute has, therefore, made no provision for the trial of actions in replevin, before justices, until the property is found and replevied.

*St. Martin v. Desnoyer*, 1 Minn. (1 Gil.) 25, 29 (1858).

We also note that our civil rules of procedure contemplate that a replevin action be commenced by applying for a writ of replevin. M.R.Civ.P. 64(c) provides that "a replevin action may be commenced *only* by filing a complaint with the court, together with a motion for approval of the writ of replevin and the amount of the replevin bond."

In summary, our replevin statute does not authorize the court to issue a post-judgment writ of replevin. The writ of replevin referred to in 14 M.R.S.A. §§ 7301–7312 and Rule 64 is a pre-judgment remedy only.[9] The replevin statute does not confer jurisdiction on a court to adjudicate a claim of possession pursuant to the replevin statute until the procedural requirements have been satisfied. If, on the other hand, the plaintiff seizes the property pursuant to a writ of replevin and has provided the appropriate bond to the defendant, the court has jurisdiction pursuant to the replevin statute to determine who is the rightful possessor and to award damages resulting from the wrongful detention of the chattel.

Turning to the facts in the present case, Amos did not file a motion for approval of a writ of replevin, nor did he file the required affidavits alleging his immediate right to possession or a bond for twice the value of the boat, at the time he filed his complaint. Without Amos's affidavit or bond, the District Court had no jurisdiction to issue a writ of replevin to restore the boat to Amos's possession as requested in Amos's complaint. Moreover, because no writ was issued and because the boat was not replevied, the court had no jurisdiction to finally adjudicate which party had the right to possess the boat pursuant to 14 M.R.S.A. § 7301.

In reaching our decision, we stress that failure to obtain a writ of replevin only prevents the court from hearing an action in replevin pursuant to 14 M.R.S.A. §§ 7301–7312. Failure to obtain a writ does not prevent a plaintiff from proceeding in District Court on an *action in forcible entry and detainer* to obtain possession of a chattel, pursuant to 14 M.R.S.A. § 6012 (1980).[10] In the alternative, if the chattel is unavailable to be replevied, a plaintiff may obtain recovery of a chattel by obtaining a judgment in equitable replevin in either the District Court or the Superior Court.[11]

---

8. 14 M.R.S.A. § 7308 (1980) provides in pertinent part that if the plaintiff prevails in his action, "the plaintiff shall have judgment for his damages caused thereby and for his costs."

9. We are forced to this conclusion, as was the Supreme Court of New Mexico, because the statute "neglected to make proper provision by statute for the maintenance of the action without the issuance of a writ and the seizure of the property at the beginning of the proceeding." Although this may be an oversight, "it is one which cannot be remedied by any forced construction of the statute by the courts." *Troy Laundry Mach. Co. v. Carbon City Laundry Co.*, 27 N.M. 117, 196 P. 745, 747 (1921).

10. The forcible entry and detainer statute, 14 M.R.S.A. § 6012 (1980), permits a plaintiff to file an action to recover possession of personal property in the District Court. Jurisdiction to issue equitable turnover orders is specifically conferred on the District Court. If the defendant in such an action answers the plaintiff's complaint by claiming title in himself, however, the action is removed to the Superior Court. *Colonial Builders and Investors, Inc. v. Meier*, 417 A.2d 422 (Me.1980). Thus, the District Court will only issue turnover orders pursuant to 14 M.R.S.A. § 6012 in cases in which the defendant does not claim title to the chattel.

11. Amos could not have proceeded in equitable replevin pursuant to the statutory provisions in 14 M.R.S.A. § 6051(11) (1980) or 4 M.R.S.A. § 152(5)(N) (Supp.1994) because the boat was at all times located in Ethelyn's yard and not "secreted or withheld so that the goods or chattels cannot be replevied."

## Conversion Damages

The District Court has original jurisdiction of all civil actions with damages claimed which do not exceed $30,000 pursuant to 4 M.R.S.A. § 152(2) (1989). Hence, although the District Court did not have jurisdiction to issue a writ of replevin as requested by Amos in count one of his complaint, it had jurisdiction to decide Amos's action for conversion contained in count two and to award him damages resulting from Ethelyn's wrongful retention of the boat.

We have previously stated that the gist of conversion is an invasion of a party's possession or right to possession.[12] *Chiappetta v. LeBlond,* 505 A.2d 783, 785 (Me.1986). The plaintiff must show "(1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by *the person entitled to possession and a refusal by the holder to surrender." Id.* The traditional measure of damages in a conversion action is the value of the property at the time of the unlawful conversion. *General Motors Acceptance Corp. v. Anacone,* 160 Me. 53, 197 A.2d 506, 525 (1964). In certain cases, however, consequential damages, including lost earnings, may be warranted when the plaintiff can show that the damages were proximately caused by the defendant's acts and the amount of damages can be shown with reasonable certainty.[13] 18 Am. Jur.2d. Conversion, § 119 (1985).

The District Court's conclusion that Amos purchased the boat before Ethelyn had repossessed it is supported by the testimony of Neil and Amos. Assuming without deciding that the receipt signed by Neil constituted a valid security interest pursuant to 11 M.R.S.A. § 9–203 (1994), the trial court had an adequate basis for concluding that Ethelyn did not perfect her interest before the sale occurred pursuant to 11 M.R.S.A. § 9–305 (1994). In addition, the trial court had an adequate basis for concluding that Amos gave value and received delivery of the boat "without knowledge of the security interest and before it was perfected." 11 M.R.S.A. § 9–301 (1994). Accordingly, Amos's interest in the boat took priority over Ethelyn's purported security interest, and Ethelyn converted Amos's boat when she took possession of it.

Ethelyn's contention that the District Court awarded excessive damages to Amos for her conversion, however, has merit. In an action for damages the plaintiff "has a 'duty' to use reasonable efforts to mitigate his or her damages." *Marchesseault v. Jackson,* 611 A.2d 95, 99 (Me.1992).[14] During the trial, Amos testified that he first learned that Ethelyn claimed title to the boat about ten days after the sale, sometime in

---

12. In both replevin and conversion, the court determines which party has the superior right of possession. In replevin, however, the court merely confirms whether the plaintiff may keep the property which has previously been delivered to the plaintiff pursuant to the writ of replevin. The court may also determine whether the plaintiff is entitled to ancillary damages sustained as a result of the defendant's wrongful retention of the property. In a conversion action, the determination of who was entitled to possession of the property is necessary only to determine whether the plaintiff is entitled to damages resulting from a wrongful conversion, including the value of the property as an element of damages.

13. Because the District Court had already determined that Amos was entitled to possession of the boat, it properly excluded the value of the boat when it awarded Amos damages arising from Ethelyn's wrongful conversion. On remand for the reconsideration of Amos's conversion damages, however, the value of the boat should now be considered because the District Court cannot order its return to Amos in this action.

14. The defendant has the affirmative burden to plead and prove plaintiff's failure to mitigate damages. *Marchesseault v. Jackson,* 611 A.2d 95, 99 (Me.1992). Ethelyn did not raise Amos's failure to mitigate damages as an affirmative defense in her answer to Amos's complaint but she did cross examine Amos on his failure to mitigate. Moreover, both parties filed proposed findings of fact and conclusions of law at the close of the trial. Ethelyn specifically requested a factual finding that Amos did not use any of the boats he already owned nor did he attempt to replace the boat for lobstering until 1992. Amos was clearly on notice that Ethelyn was contesting his claimed damages and was arguing that he did not undertake reasonable efforts to mitigate his damages. Accordingly, Amos's failure to mitigate his damages was tried by implied consent of the parties. Amos does not argue to the contrary.

late November or early December, 1990. It was at this time, approximately six months before the 1991 lobster season, that Amos decided to forgo lobster fishing during 1991. Amos admitted that he did not attempt to rent or purchase a replacement boat until before the 1992 lobster season when he purchased a replacement boat for $1,000.

On these facts, we conclude that Amos's claim for lost earnings should be limited to the period it would take a reasonable person to replace the $500 boat. *See e.g., Nika Corp. v. City of Kansas City, Mo.*, 582 F.Supp. 343, 366 (D.W.D.Mo.1983) (holding that loss of use claims and loss of earnings claims are ordinarily limited to period it would take reasonable person to replace the converted item because of general requirement that a plaintiff take reasonable steps to minimize his damages); *Southern Missouri Bank v. Fogle*, 738 S.W.2d 153, 158 (Mo.Ct. App.1987) (holding that plaintiff is required to take reasonable steps to minimize damages and damages in conversion are limited to period it would take reasonable person to replace converted items). The trial court erred in awarding Amos lost profits for 1991.

### Action for Money Lent

 Ethelyn's third-party complaint against Neil stated a claim for money lent. The essence of her claim was that Neil borrowed $1,000 from Bernard and has not paid back the loan. Ethelyn contends that Bernard assigned to her his right to enforce the debt and that the trial court erred in entering a judgment in favor of Neil. Ethelyn also contends that contrary to the factual finding by the trial court, there was no evidence in the record to suggest that Bernard forgave the loan, and the fact that Bernard may have turned down Neil's offer to pay him in installments does not discharge Neil from his debt. We agree that the judgment for Neil must be vacated.

 An action for money lent is an action at law for the recovery of money, based on an allegation that there was money lent to the defendant. 58 C.J.S. Money Lent, § 1 (1948). A plaintiff establishes a prima facie case by showing that the money was delivered to the defendant, the money was intended as a loan and the loan has not been repaid. *Cartney v. Olson*, 154 Neb. 546, 48 N.W.2d 653, 656 (1951); *Siebrecht v. Siebrecht*, 137 N.Y.S. 1073, 1074 (N.Y.App.Div. 1912). A promise by a debtor to repay the loan may be implied. *Nelson v. Pedersen*, 361 Mass. 392, 280 N.E.2d 431, 432 (1972); *Minevitch v. Puleo*, 9 A.D.2d 285, 193 N.Y.S.2d 833, 836 (1959). The rationale for not requiring an express promise is that the word "loan" implies a promise to repay. *Herlihy v. Coney*, 99 Me. 469, 471, 59 A. 952 (Me.1905). When the parties have not specified any time for repayment, the loan is payable on demand. *Davidson v. Walsh*, 158 Ga.App. 845, 282 S.E.2d 366, 367–68 (1981); *Minevitch*, 193 N.Y.S.2d at 836.

 Neil does not dispute that Bernard loaned him $1,000 and that the receipt evidenced that loan. Although Neil also concedes that he never repaid his father, Neil claims that his father orally released him from the debt.[15] Accordingly, Neil had the burden to prove by a preponderance of the evidence that Bernard released Neil from repaying the debt.

 "A release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be enforced or exercised." 66 Am.Jur.2d, Release, § 1 (1973). Although a release need not be in writing, "the formalities of a binding contract apply to an oral release." 76 C.J.S. Release, § 7 (1994). Thus, in order to avoid a debt, the debtor must show that the oral release was supported by a new consideration.

> A mere statement of a creditor that he intends to release, or that he does release, a debtor, there being no consideration moving from any one for the promise, the debt is not thereby discharged. The debt was created by contract for a sufficient consideration. It can be discharged by

---

**15.** We note that release from a debt is an affirmative defense and as such, Neil should have pleaded the defense in his Answer to Ethelyn's counterclaim. M.R.Civ.P. 8(c). Ethelyn did not object, however, when Neil presented evidence of Bernard's alleged release of the debt. Accordingly, Neil's defense was tried by the implied consent of the parties. M.R.Civ.P. 15(b).

contract for a sufficient consideration, but a naked promise to release without consideration is not a discharge.

*Garnsey v. Garnsey,* 116 Me. 295, 298, 101 A. 447 (1917). *But c.f. Tozier v. Tozier,* 437 A.2d 645, 648 (Me.1989) (holding that sufficient detrimental reliance can render enforceable a promise to make a gift.) Even if we accepted as true Neil's testimony that Bernard told him he did not want the boat or the money, Neil failed to show that Bernard's release was supported by new consideration. Accordingly, Neil was not discharged of his obligation to repay Bernard the $1,000 and his defense fails as a matter of law.

 Because Bernard assigned his right to enforce the debt to Ethelyn, she is entitled to a judgment on her action for money lent. We have previously defined an assignment to be "an act or manifestation by the owner of a right (the assignor) indicating his intent to transfer that right to another person (the assignee)." *Herzog v. Irace,* 594 A.2d 1106, 1108 (Me.1991). So long as the assignment does not .materially change the obligation of the obligor, ordinary rights are freely assignable. *Id.* at 1109. The language in the writing signed by Bernard and his testimony are sufficient to demonstrate that he assigned to Ethelyn his right to collect the loan from Neil. In addition, because the assignment merely changes the identity of the obligee, the assignment does not materially alter Neil's obligation. Accordingly, we vacate the decision of the District Court and hold that Ethelyn sustained her burden to prove her action for money lent and she is entitled to a judgment for $1,000.

The entry is:

Judgment for Cecil Amos Doughty vacated. Remanded to the Superior Court with instructions to remand to the District Court for further proceedings consistent with the opinion herein on Cecil Amos Doughty's conversion claim for damages. Judgment for Neil Doughty vacated and remanded to the Superior Court with instructions to remand to the District Court for the entry of a judgment in the amount of $1,000 in favor of Ethelyn Sullivan on her third-party complaint.

All concurring.