**Irene BUTLER et al.**

v.

**John HARDY.**

Supreme Judicial Court of Maine.

Argued May 31, 1990.

Decided June 21, 1990.

---

Roger G. Innes (orally), Hale & Hamlin, Ellsworth, for appellant.

Joel A. Dearborn (orally), Laurie Anne Miller, Ferris, Dearborn & Willey, Brewer, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

This case involves the distribution of the estate of Herbert F. Hardy, who died in 1979. Herbert was survived by his wife Ruth and four children: Robert Hardy, Irene Butler, Pauline Toney, and John Hardy. A fifth child predeceased Herbert, leaving children who survived Herbert. John and Irene, the primary parties in this action, serve as co-personal representatives of Herbert's estate.

In April 1979 Herbert and his wife were living in Florida. Upon learning that Herbert was seriously ill, John and Irene traveled to Florida to help their mother and father return to Maine. While in Florida, Irene discovered a draft of her father's will. The will gave Herbert's wife Ruth a life estate in all his property and left most of the remainder to their daughter Irene. Specifically, of the remainder, son Robert would receive $100 and Irene would receive the 195–acre family farm in Great Pond Plantation (just north of Aurora in Hancock County) and 60% of the rest and residue of the estate, daughter Pauline being given the other 40%. Herbert omitted John entirely from his will, reciting in it that the "omission is not due to lack of love and affection but all other members of my family seem to be doing well."

John and Irene discussed the will while in Florida and while bringing their parents back to Maine. Based upon these discussions, John drafted a "Letter of Intent," which he and Irene signed on April 29, 1979, the day before Herbert died, outlining a distribution of the property substantially different from that directed by the will. John and Irene were appointed co-personal representatives of Herbert's estate. In late summer 1979, Irene also wrote out in her own hand and signed three "Sale Agreements" [1] (hereafter referred to as "the Sale Agreement"), all of which read in substance as follows:

> In consideration of the sum of $650.00 previously loaned to me by John M. Hardy and his further agreement to pay all inheritance taxes for which I may become liable as a result of my inheritance from the estate of Herbert F. Hardy I hereby sell and convey to said John M. Hardy my sixty per cent share in the "rest and residue" of said estate.
>
> /s/ Irene H. Butler

In 1987, Herbert's wife died. The following year, Irene petitioned the Probate Court to remove John as her fellow personal representative of Herbert's estate. In a counterclaim, John alleged that the parties' Letter of Intent and Sale Agreement were binding contracts and sought to enforce them. Following a two-day trial, the Hancock County Probate Court (*Patterson, J.*) concluded that the Sale Agreement was indeed a valid, binding contract but that the Letter of Intent was not. John appeals, asserting that Irene should be bound by the Letter of Intent.[2] Irene cross-appeals, asserting that the Sale Agreement was not in fact a binding contract. Rejecting both assertions, we affirm.

■ Whether parties have formed a valid, binding contract is a question of fact. *See Agway, Inc. v. Ernst*, 394 A.2d 774 (Me.1978). *See also Harriman v. Maddocks*, 518 A.2d 1027, 1030 (Me.1986) ("Disputes over the existence of a binding agreement ... present classic issues for the fact-

---

1. The reason for Irene's signing three separate handwritten documents, all entitled "Sale Agreement," of nearly identical language within a period of about 14 days in the late summer of 1979, is something of a mystery, but nothing turns on the multiplicity of the documents.

2. John also appeals the court's failure to award him fees and costs pursuant to M.R.Civ.P. 37(a)(4) on an earlier discovery motion. We review the court's failure to award such costs only for abuse of discretion, *see, e.g., Pettitt v. Lizotte*, 454 A.2d 329, 332 (Me.1982), and find none in this case.

finder"). John, as the party seeking to enforce the alleged contract, bears the burden of proving its existence. The Probate Court concluded that John had failed to meet his burden of proof and that the Letter of Intent was not in fact a valid contract. We will reverse the court's factual conclusion adverse to the party with the burden of proof only if the record compels a contrary conclusion to the exclusion of any other inference. *See, e.g., Luce v. Hoefler*, 464 A.2d 213, 215 (Me.1983). By no means does the record compel a conclusion that the parties had a meeting of minds that the Letter of Intent would constitute a binding contract.

 Language in the Letter of Intent, drafted by John, shows that both parties anticipated further action. The document recites the parties' "intent to take the steps necessary to obtain the following equitable distribution." No further action was taken. Further, Irene testified that she viewed the Letter of Intent as "a proposal that contained [John's] ideas," that she "wanted other family members to have input into it," and that "[t]here was no agreement." The court expressly accepted Irene's testimony as evidence that there was no meeting of the minds.

John also asserted that Irene's promises in the Letter of Intent induced him not to challenge Herbert's will and that, therefore, principles of promissory estoppel apply. The court accepted Irene's testimony that a will contest was not mentioned as an alternative to the Letter of Intent and concluded that her actions did not induce John to forebear from pursuing any legal right. *See Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me.1978). In light of Irene's testimony, and the court's finding that the Letter of Intent was not a contract on which John could rely, this conclusion is not clearly erroneous. Accordingly, the court did not err in rejecting John's claim of promissory estoppel.

We turn now to the issue raised by Irene's cross-appeal. The court found that John had met his burden of proof in establishing that the Sale Agreement constitutes a binding contract. We review the court's

finding of fact for clear error and find none. The unambiguous Sale Agreement was written by Irene in her own hand and was duly signed and witnessed. It clearly recites the consideration for Irene's promise and on its face contains all the elements of a valid contract. Therefore, the court did not err in finding it to be a binding contract.

The entry is:

Judgment affirmed.

All concurring.