## SMILE, INC.

v.

## MOOSEHEAD SANITARY DISTRICT.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 21, 1994.

Decided Nov. 10, 1994.

---

Richard Silver, Russell, Lingley & Silver, Bangor, for plaintiff.

J. William Batten, Jabar & Batten, Waterville, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

Smile, Inc. appeals from the judgment entered in the Superior Court (Penobscot County, *Marsano, J.*) in favor of Moosehead Sanitary District following a jury-waived trial on Smile's complaint seeking damages for the District's breach of an alleged contract with Smile. Smile contends that the trial court erred by its determination that there was no enforceable oral or written agreement between the parties. We affirm the judgment.

At the trial of this case the court heard the following essentially undisputed evidence: In 1972, in the context of planning the construction of condominium units at Moosehead Lake with an on-site sewage treatment system, Smile learned of the formation of the District in Greenville and contacted the District concerning the sewage disposal for the units. On April 14, 1972, the District sent Smile a letter of intent to enter into a contract with Smile for the disposition of sewage and other waste waters from the condominium to be built by Smile. The letter stated that the initial assessment or permit fee and the rate or user fee to be charged Smile by the District would be determined at a later date. By its letter dated May 16, 1972, the District advised Smile that the District's board had "voted to offer [Smile] the opportunity to utilize the Greenville sewage treatment plant, at such time as the system begins operation" and reaffirmed the statement in its letter of April 14 that rates to be charged Smile would be determined later. The letter also stated that Smile was to build the connecting pipe from the condominium area to the end of the sewer main of the plant and, if approved by the District's engineer on completion, ownership of the pipe would be transferred to the District and

thereafter it would be maintained and repaired by the District.

By 1973, Smile had constructed 43 condominium units and was transporting the waste from the units by truck to a disposal site not owned by the District. Construction of the sewage plant was delayed because of environmental issues and delays in securing government funding. In November 1973, the District contacted Smile requesting that it submit engineering plans for the sewer tie-in. In January 1974, Smile forwarded a letter to the District suggesting it be used "as a guide to drafting a contract." By its reply in March 1974, the District proposed a number of modifications to the conditions outlined in the January 1974 letter.

During the period of the construction and operation of the sewage disposal plant, Smile was unable to secure the necessary permits for construction of the tie-in with the system because of the number of pending legal actions seeking the removal of the plant's discharge pipe from Moosehead Lake. From the time the plant went on-line in August 1975, the District encountered numerous problems with its construction and operation resulting in law suits seeking its closure. In June and July 1976 there had been further negotiations between the parties without reaching an agreement as to the date for the hook-up of the sewage disposal line from the condominium units to the plant, the party that would bear the costs of construction of the tie-in line, lien rights for enforcement of payment of fees and charges, division of operation and maintenance costs, legal fees, and cost of construction of any new plant.

In January 1978, after the plant was deemed inoperable and plans were under way for a second plant, having a smaller capacity and with the waste being treated on land purchased by the District for that purpose, the District notified Smile that the new plant could not accommodate sewage or waste water discharged by the condominium. Smile had constructed approximately 57 units and was still removing the waste from such units by truck. Amendments to the environmental regulations prevented the construction of an on-site sewage treatment system by Smile that would accommodate its proposed development to include approximately 200 condominium units.

Smile brought the present action seeking damages from the District on its claim for the breach of an alleged contract between the parties. After a hearing, the trial court found "as a matter of fact that the parties never reached an oral agreement as to the responsibilities that each of them had to each other with respect to the treatment of sewer waste.... [T]he writings introduced into evidence do not in any fashion or in any combination result in an agreement oral in nature, which was memorialized in writing and ... the parties [n]ever intended any of the writings in whatever combination to represent a final contract." Accordingly, a judgment was entered in favor of the District, and Smile appeals.

 Smile contends that the trial court erred in its factual determination that no contract existed between the parties. It argues that the evidence supports that an agreement between the parties had been reached between 1972 and 1975. We disagree. We have previously stated that the existence of a contract is a matter to be determined by the fact finder. *Butler v. Hardy*, 576 A.2d 202, 203 (Me.1990). "We will reverse the court's factual conclusion adverse to the party with the burden of proof only if the record compels a contrary conclusion to the exclusion of any other inference." *Id.* at 204. Preliminary negotiations as to the terms of an agreement do not constitute a contract. *Masselli v. Fenton*, 157 Me. 330, 172 A.2d 728, 731 (1961). To establish a legally binding agreement between parties, the mutual assent to be bound by all its material terms must be reflected and manifested either expressly or impliedly in the contract and the contract must be sufficiently definite to enable a court to determine its exact meaning and fix any legal liability of the parties. *Roy v. Danis*, 553 A.2d 663, 664 (Me.1989). Smile, as the party seeking to enforce the alleged contract, had the burden to establish its existence. This record does not compel a conclusion that the parties had a meeting of the minds. The correspondence between the parties establishes that material terms continued to be negotiated and both

parties anticipated further action. The evidence supports the trial court's conclusion that there was no oral or written agreement between the parties.

■ We find no merit in Smile's alternative contention that the District is estopped from denying the existence of a contract between the parties. The record reflects that Smile relies on the same evidence to support this claim as it did to support its claim of the breach of an alleged contract. Although the trial court made no findings regarding promissory estoppel, we note that Smile requested none. *See* M.R.Civ.P. 52(a) ("In all actions tried upon the facts without a jury ... [the trial court] shall, upon the request of a party ... find the facts specially and state separately its conclusions of law thereon....") We assume in the absence of such a request that the trial court found all the facts necessary to support its decision and properly determined, as evidenced by the judgment, that Smile had not met its burden of proof to establish a claim for promissory estoppel. *Woods v. Bath Indus. Sales, Inc.,* 549 A.2d 1129, 1132 (Me.1988).

The entry is:

Judgment affirmed.

All concurring.