STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-99-727

DANIEL P. MCINTYRE,

        Plaintiff

        v.

DEIRDRE NICE,                                     ORDER ON DEFENDANT'S
                                                  MOTIONS FOR
        Defendant/Third-Party Plaintiff           SUMMARY JUDGMENT

        v.

STEFANI NICE and NICE FOODS
CORPORATION,

        Third-Party Defendants


## FACTUAL BACKGROUND

Defendant Deirdre Nice and her sister, Stefani Nice, are each 50% owners of

Nice Foods Corporation. Defendant's Statement of Material Facts ("DSMF") ¶ 1. At

all relevant times, Deirdre was Secretary, Treasurer and Vice President and Stefani

was President of Nice Foods. Id. ¶ 5. Plaintiff Daniel McIntyre is a licensed, inactive

attorney. Id. ¶ 2. Nice Foods owns and operates Silly's Restaurant, an eating

establishment currently located at 40 Washington Avenue in Portland, Maine. Id. ¶

3.

In 1995, Nice Foods wanted to expand Silly's and move to a building on

Washington Avenue that had become available for purchase. Id. ¶¶ 4, 7. The

business, however, needed to borrow money to purchase this new and more

profitable location. Id. ¶ 7. After some discussions between Deirdre and Stefani,

they agreed that the corporation should accept money from McIntyre because it

would be faster than seeking conventional financing. Id. ¶ 9.

On January 23, 1995, McIntyre signed a check payable to "Nice Foods Corporation" in the amount of $45,000. Id. ¶ 10. A second payment in the amount of $65,000 was made payable to "Nice Foods Corporation" on June 6, 1995. Id. ¶ 11. A third payment of $20,000 was made to Nice Foods on November 23, 1995. Id. ¶ 12. This check appears to bear the endorsement "Deirdre Nice". Plaintiff's Opposing Statement of Material Facts ("POSMF") ¶¶ 13, 15. The total amount of the three checks was $130,000. DSMF ¶ 14. Deirdre Nice never signed a promissory note evidencing the loan in her individual or any other capacity. Id. ¶ 15; POSMF ¶ 15.

The Plaintiff filed an amended complaint on December 22, 1999 asserting claims for fraud (Count I) and money loaned and not repaid (Count II). The Defendant subsequently counterclaimed for assault and battery (Count I), breach of a fiduciary duty (Count II), fraud (Count III), intentional infliction of emotional distress (Count IV), and civil conspiracy (Count VI). The Defendant also filed a third-party complaint against Stefani Nice and Nice Foods Corporation seeking a declaratory judgment that repayment of funds is an obligation of the third-party defendants (Count I) and dissolution of the corporation (Count III) and alleging breach of a fiduciary duty (Count II) and civil conspiracy (Count IV). Counts II, III and IV were subsequently dismissed with prejudice and without costs.

In a letter dated February 9, 2000, Plaintiff's attorney Jon Holder set forth the terms of a settlement agreement between the parties. Def.'s Supplemental Pleading SMF ¶ 5. The letter reads:

This will confirm that we have reached an agreement in principle to settle the above-captioned action. The terms we have agreed to are as follows:

1. Dan McIntyre will pay Deirdre Nice the sum of Eight Thousand Dollars ($8,000.00).

2. Deirdre Nice will convey all her shares in Nice Foods Inc. to the corporation.

3. The parties (including Stefani, who remains unrepresented) will execute mutual releases.

As we discussed over the phone, my client has confirmed his agreement to the above terms, but may have certain specifications as to the breadth of claims against him which are contained in the principal release. I think such concerns could be addressed by executing a separate release and/or dismissal with prejudice of all claims.

Id. ¶ 5 & Ex. A.

On February 22, 2000, the Plaintiff forwarded $8,000 to the Defendant's attorney. Def.'s Supplemental Pleading SMF ¶ 6. The letter accompanying this check requested the money to be held in escrow "until such time as the parties execute a final agreement in this matter." Id. & Ex. B. The letter also stated that "an agreement between our clients has been reached and that Deirdre Nice has agreed to turn over her shares in Nice Foods Inc. to Nice Foods Inc. in exchange for $8,000.00. Thus, the details remaining to be finalized relate to the flow of consideration between Stefani Nice, Nice Foods Inc. and Daniel McIntyre." Def.'s Supplemental Pleading SMF ¶ 7 & Ex. B.

The Defendant's attorney acknowledged receipt of the funds in a letter dated February 23, 2000, but rejected the recharacterization of the payment stating that the "only correction I want to make to your letter is that the $8,000 payment is strictly for settlement of the McIntyre/Nice claims. The surrender of Deirdre's shares to the

corporation is being made for separate non-monetary consideration." Def.'s Supplemental Pleading SMF ¶ 8 & Ex. C. The Defendant's attorney subsequently requested the plaintiff's attorney to forward the simple release anticipated by the Settlement Agreement. Def.'s Supplemental Pleading SMF ¶ 10.

On November 8, 2000, the Defendant's motion to supplement her pleadings to request a declaratory judgment and specific performance of the alleged settlement agreement between the parties was granted. The Defendant now seeks a summary judgment on the supplemental pleadings as well as the Plaintiff's complaint.

## DISCUSSION

### I. Supplemental Pleadings

To establish a legally binding agreement, the Defendant must establish that the parties mutually assented to be bound by all the material terms "reflected and manifested either expressly or impliedly in the contract . . . . " Smile, Inc. v. Moosehead Sanitary District, 649 A.2d 1103, 1105 (Me. 1994). Further, the contract must be sufficiently definite to enable this Court to determine its exact meaning and fix the legal liability of the parties. Forrest Assoc. v. Passamaquoddy Tribe, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044.

The Defendant argues that the parties clearly agreed to settle this case on February 9, 2000. It is clear from the correspondence between the parties, however, that there was no agreement regarding consideration. The Plaintiff's February 22, 2000 letter recognized that an agreement had been reached between the parties and that Deirdre agreed to surrender her shares in Nice Foods in exchange for the $8,000.

The Defendant's letter in response indicates that she did not consider the $8,000 to be in consideration for the surrender of her shares and that the payment was only for settlement on the claims between the two parties.

Summary judgment is inappropriate because the correspondence between the parties does not reveal a meeting of the minds. The Defendant's attorney represented at the hearing that the $8,000 will be returned to Mr. McIntyre in the event the Court denies this motion for summary judgment. The Plaintiff's motion seeking return of those funds is therefore premature.

## II. The Complaint

### A. Fraud

The Defendant is liable for fraud if she (1) made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing Mr. McIntyre to act in reliance upon the representation, and (5) Mr. McIntyre justifiably relied upon the representation as true and acted upon it to his damage. See Francis v. Stinson, 2000 ME 173, ¶ 38, 760 A.2d 209, 217. The evidence must show that the existence of fraud is highly probable. Id. ¶ 39.

The Plaintiff argues that Deirdre falsely told him that she and Stefani were always able to work any differences out in a constructive fashion and that their partnership was very strong. McIntyre Aff. ¶ 8. Mr. McIntyre argues that the falsity of this statement was later revealed when Deirdre told him that she could no longer work with her sister and when Stefani told him that the sisters' relationship had

been rocky from the start.

There is no evidence before the Court that Deirdre told Mr. McIntyre that she could no longer work with her sister.[1] Even if such a statement existed, however, it would be insufficient to establish the falsity of Deirdre's statement at the time it was made. Whether Deirdre and Stefani had been able to resolve their disputes prior to the making of the alleged false statement is not impacted by their later inability to work together. Stefani's statement to Mr. McIntyre that the sisters' relationship had been rocky from the start does raise an issue as to the falsity of Deirdre's representation that their relationship was strong, however.

The Plaintiff has also provided evidence that Deirdre's representation was material and was made for the purpose of inducing Mr. McIntyre to lend the money. It was only when Mr. McIntyre explained his concern about lending money to family businesses and asked whether there were any problems with her relationship with Stefani that Deirdre told him that their partnership was very strong and healthy. McIntyre Aff. ¶ 8. The Plaintiff asserts that he would never have loaned money to Silly's if he knew of any friction between the sisters. Id.

The Defendant argues that Mr. McIntyre's reliance on Deirdre's representations were *per se* unjustified because family relationships are constantly subject to change. Reliance is unjustified only if Mr. McIntyre knew the

---

[1] Although this statement is found in paragraph 16 of Mr. McIntyre's affidavit, that paragraph is not referenced in either the Plaintiff's opposing or additional statements of material facts. See M.R. Civ. P. 56(h)(2). This Court is not permitted to search the record to find support for the facts offered by the parties. See Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 9, __ A.2d __; M.R. Civ. P. 56(h)(4).

representation regarding the strength of the sisters' partnership was false or its falsity was obvious to him. Francis, 2000 ME 173, ¶ 38, 760 A.2d at 217. There is no evidence that McIntyre knew of the falsity or that the falsity was obvious.

## B. Money Lent

The Defendant argues that the enforceability of any agreement between the parties is barred by the Statute of Frauds either because the Plaintiff is attempting to charge Deirdre to answer for the debt of Nice Foods or because the agreement was not to be performed within one year.

A person may not be charged to answer for the debt of another unless the promise or agreement is in writing and signed by that person. 33 M.R.S.A. § 51(2) (1999). Before this Court may determine the enforceability of a guaranty under the Statute of Frauds, the evidence must establish the existence of such an oral contract. See Graybar Elec. Co. v. Sawyer, 485 A.2d 1384, 1388-89 (Me. 1985). Because there is no evidence before the Court that Deirdre promised to pay on behalf of Nice Foods, this provision of the Statute of Frauds is inapplicable.

The Statute of Frauds bars enforceability of agreements that are not to be performed within one year unless the agreement is in writing and signed by the party charged. 33 M.R.S.A. § 51(5). It does not matter whether it is conceivable that the contract could have been performed within one year. Great Hill Fill & Gravel, Inc. v. Shapleigh, 1997 ME 75, ¶ 5, 692 A.2d 928, 929. Instead, whether this provision of the statute applies depends upon whether the parties have manifested an intent that the contract not be performed within one year. Id.

At some point in 1995 prior to the loan, Mr. McIntyre told Deirdre and Stefani that he would not expect repayment of the loan to begin until the renovations were complete and the new business was generating income. McIntyre Aff. ¶ 9. Although Deirdre may have approached McIntyre some time after the loan was made to try and establish a date for repayment, there is no evidence indicating any attempt to repay the loan. It was not until the summer of 1997 that Mr. McIntyre approached Deirdre to discuss repayment of the loan. McIntyre Aff. ¶ 15. These actions clearly evince an intent that the contract not be performed within one year.

When applicable, the Statute of Frauds will bar enforceability of any agreement between the parties unless there exists a writing signed by the Defendant. The Plaintiff claims that the Defendant's endorsement on the checks from Mr. McIntyre is sufficient to establish a writing signed by the party to be charged. The Statute of Frauds requires the writing to contain "within itself, or by some reference to other written evidence . . . all the essential terms of the contract, expressed with such reasonable certainty as may be understood from the memorandum and other written evidence referred to, (if any) without any aid from parol testimony." Gagne v. Stevens, 1997 ME 88, ¶ 9, 696 A.2d 411, 414. These checks evidence a payment made by the Plaintiff to Nice Corporation. Because the checks do not reflect whether they represent a gift or a loan, the time of repayment or who was to repay, if anyone was to repay at all, the writing signed by Deirdre Nice is insufficient. The Statute of Frauds therefore bars enforceability of any oral agreement between the parties unless an exception applies.

8

Mr. McIntyre's full performance of the contract provides an exception to the Statute of Frauds. The Statute of Frauds may not be asserted as a defense when one party to the contract has completed his performance. RESTATEMENT (SECOND) OF CONTRACTS § 130 (1981). The illustration given by the Restatement to explain the full performance doctrine is the contract performed by one party at the time it is made, such as the loan of money. Id. cmt. d. It is undisputed that Mr. McIntyre fully performed by drawing three checks totalling $130,000. This is sufficient to except the alleged oral agreement between the parties from the Statute of Frauds.

Although the Statute of Frauds does not prevent this Court from examining the alleged oral contract between the parties, summary judgment is appropriate on the merits of the Plaintiff's claim for money lent. An action for money lent is an action at law for the recovery of money. Doughty v. Sullivan, 661 A.2d 1112, 1123 (Me. 1995). A prima facie case is established by showing that the money was delivered to the defendant, it was intended as a loan and the loan has not yet been repaid. Id.

The Plaintiff has failed to establish that the money was intended as a loan to the Defendant. The three checks drawn by Mr. McIntyre were payable to Nice Foods Corporation, not Deirdre Nice. Although at least one of those checks was signed by Ms. Nice, there is no evidence that the Defendant signed any of the checks in her personal rather than representative capacity or that the proceeds went to Deirdre rather than the payee.

The Plaintiff refers to testimony of Deirdre's accountant, Bruce Moir, to

establish that the loan was made to Deirdre personally. Mr. Moir testified that originally it was his impression that the loan was to Deirdre and Stefani, who then invested the money in the corporation. This allowed Deirdre and Stefani, as shareholders in an S corporation, to deduct any loss to the extent they advanced funds to Nice Foods. He went on to testify, however, that he realized in 1999 that he had prepared Deirdre and Stefani's personal tax returns improperly because the checks from Mr. McIntyre were written to the corporation and deposited in the corporate account. The transaction therefore could not constitute shareholder basis so as to permit a deduction on the personal returns. Because the Plaintiff has not raised an issue of fact that the loan was made to Deirdre Nice personally, summary judgment must be granted to the Defendant.

## C. Piercing the Corporate Veil

Courts are generally reluctant to disregard the legal entity because, as matter of public policy, corporations are separate legal entities with limited liability. Johnson v. Exclusive Prop. Unlimited, 1998 ME 244, ¶ 5, 720 A.2d 568, 571. A court may pierce the corporate veil, however, when equity so demands. Id. The Plaintiff urges the Court to pierce the corporate veil in the event that the debt is determined to be corporate. Mr. McIntyre failed to plead that Deirdre Nice has abused the corporate form, however. Even if the Court were to consider such a claim, the Plaintiff has not established any of the factors necessary for this Court to pierce.

In the ordinary case in which piercing the corporate veil is raised, a third party is seeking to disregard the corporate form to impose the corporation's

10

liabilities on a shareholder. Sturtevant v. Town of Winthrop, 1999 ME 84, ¶ 21, 732 A.2d 264, 269. Mr. McIntyre argues that this Court should hold the corporation liable on a theory of reverse piercing. The typical reverse pierce case involves a corporate insider attempting to pierce the veil from within so that the corporation and the individual will be considered as one unit. 1 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.70, at 685 (perm. ed. 1999). A variation on this theme is when an outsider attempts to pierce the veil so that the corporation and the individual will be considered as one. Id.; see also Goya Foods, Inc. v. Unanue, 233 F.3d 38, 43 (1st Cir. 2000) (noting that reverse piercing makes the corporation liable for the debts of its owner or parent).

The Law Court has never recognized the doctrine of reverse piercing. See Sturtevant, 1999 ME 84, ¶ 22, 732 A.2d at 270 ("Even if we were to allow reverse piercing, [the plaintiff] has not met his burden showing that an injustice will occur unless the corporate form is disregarded."). In fact, the Court has stated that "the weight of authority is against reverse piercing." Id.¶ 21. Regardless whether the Law Court would recognize this doctrine, the Plaintiff has not established that "(1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." Johnson, 1998 ME 244, ¶ 6, 720 A.2d at 571.

The entry is

Plaintiff's Motion for Return of Funds is DENIED.

Defendant's Motion for Summary Judgment on the Supplemental Pleadings is DENIED.

Defendant's Motion for Summary Judgment on the complaint is DENIED as to Count I but GRANTED as to Count II.

Dated at Portland, Maine this 16th day of May, 2001.

Robert E. Crowley
Justice, Superior Court

Date Filed 12-17-99     CUMBERLAND     Docket No. CV 99-727

County

Action CONTRACT

DANIEL P. MCINTYRE

DEIRDRE NICE
VS
STEFANI NICE
NICE FOODS INC.

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ~~JON HOLDER ESQ 774-2899~~   W/D<br>~~PO BOX 4256, PORTLAND ME 04104~~<br><br>KEVIN HEFFERNAN, ESQ .<br>555 FOREST AVENUE, #200<br>PORTLAND, MAINE 04101<br>874-9052<br><br>   DAVID MCCONNELL ESQ 774-2635<br>   ONE CANAL PLAZA, PO BOX 426<br>   pm 04112-0426 | CHRISTIAN T. CHANDLER ESQ   775-2361<br>PO BOX 7320, PM  04112<br>    STEFANI NICE -PRO SE<br><br>TODD S. HOLBROOK, ESQ 774-1200 (Nice Foods)<br>PO BOX 9729, PORTLAND ME 04104<br><br>THIMI MINA ESQ. (S. NICE)<br>12 CITY CENTER, PORTLAND 04101 |

| Date of Entry | |
|---|---|
| **1999**<br>Dec. 17<br><br>"    " | Received 12-17-99:<br>Complaint Summary Sheet filed.<br>Complaint filed. |
| Dec. 23<br><br>" " | Received 12-22-99.<br>Summons filed showing officer's return of service on 12-16-99 upon defendan<br>Plaintiff's First Amended Complaint filed. |
| **2000**<br>Jan. 06<br><br>"    " | Received 01.05.00:<br>Counterclaim Summary Sheet filed.<br>Defendant Deidre Nice Answer & Counterclaims with exhibits a,b,c filed. |
| Jan. 20 | Received 1-18-00.<br>Plaintiff's Answer to Defendant's Counterclaim filed. |
| Jan. 25 | Received 01/25/00:<br>Scheduling Order filed.  (Mills, J.)<br>The entry will be: "Scheduling Order filed.  Discovery deadline is<br>10/01/00.<br>On 01/25/00 copy mailed to Jon Holder and Christian Chandler, Esqs. |
| Jan. 26 | Received 01/25/00:<br>Defendant's Third-Party Complaint Summary Sheet filed. |
| ""    "" | Plaintiff's Motion for Attachment and Attachment on Trustee Process and<br>  Incorporated Memorandum of Law filed. |
| ""    ""<br>""    "" | Affidavit of Deirdre Nice with exhibit A filed.<br>Affidavit of Christian T. Chandler filed. |
| Jan. 27 | Received 01/26/00:<br>Plaintiff/counterclaim defendant Daniel P. McIntyre's Third party Complaint;<br>Request for Declaratory Relief filed. |