STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
Civil Action
Docket No. CV-05-072

BRADLEY C. McCURTAIN,

    Plaintiff

v.

JON MORRILL and HOLLY MORRILL

    Defendants

**DECISION AND ORDER
ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

AUG 02 2007

## I. BEFORE THE COURT

Defendants' motion for summary judgment on all remaining counts:

Count I – Breach of Fiduciary Duty (Jon Morrill)

Count II – Intentional Misrepresentation/Deceit (Jon Morrill)

Count VII – Tortious Interference (Jon Morrill)

Count XII – Tortious Interference (Holly Morrill)

Count XIII – Breach of Implied Covenant of Good Faith and Fair Dealing

Count XIV – Breach of Contract against Jon Morrill

Count XV – Negligent Misrepresentation

## II. PROCEDURAL HISTORY AND BACKGROUND

All of the counts in the complaint arise from an alleged partnership or joint venture by McCurtain and Jon Morrill formed for the purposes of buying a thirty-five acre parcel of land on or near Sebago Lake. McCurtain claims that he and Morrill intended to purchase the parcel with a third party, retain lake front lots for themselves and sell or dispose of the rest depending on the third party. McCurtain and Morrill signed a purchase and sale agreement with the owner of the property. McCurtain and

Morrill entered into negotiations with a third party, Leo Blair, to purchase the property. After that, Morrill and McCurtain's account of what happen differ dramatically. Blair purchased the entire parcel without McCurtain or Morrill. McCurtain maintains that Morrill assisted Blair with the purchase and cut McCurtain out of the deal. Morrill maintains that McCurtain's actions in the course of negotiations caused Blair to back out of the deal to purchase the property with Morrill and McCurtain. There is some evidence that Morrill was paid for his assistance to Blair in obtaining the property. Morrill insists that there was never a partnership or joint venture and that his behavior violated no duties owed to McCurtain.

Bradley McCurtain filed a sixteen-count complaint against Jon Morrill, Leo Blair, Philip Libby, Holly Morrill, the Estate of Mildred Morrill, Envision Realty Corp. [Corp.] and Envision Realty, LLC [LLC]. Libby, Blair, the Corp. and the LLC all filed an answer. Holly and Jon Morrill filed answers and a counter-claim. All claims, other than those against Jon and Holly Morrill have since been dismissed.

Jon and Holly Morrill filed a motion for summary judgment on all remaining counts[1] accompanied by statements of material fact (DSMF).

## III. DISCUSSION

### A. Summary Judgment Standard

This court will grant a motion for summary judgment when no genuine issue of material facts exists and any party is entitled to judgment as a matter of law. *Gagnon's Hardware & Furniture v. Michaud*, 1998 ME 265, ¶ 5, 721 A.2d 193, 194; M.R. Civ. P. 56(c). A fact is material when it may change the outcome of the case and "a genuine issue

---

[1] Count I, Breach of Fiduciary Duty against Jon Morrill; Count II, Intentional Misrepresentation against Jon Morrill; Count VII, Tortious Interference by Jon Morrill; Count XII, Tortious Interference by Holly Morrill; Count XIII, Breach of Implied Covenant of Good Faith and Fair Dealing; Count XIV, Breach of Contract against Jon Morrill; and Count XV, Negligence.

exists when sufficient evidence supports a factual contest to require a fact finder to choose between competing versions of the truth at trial." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. When "determining whether to grant or deny a motion for a summary judgment, the trial court is to consider *only* the portions of the record referred to, and the material facts set forth in the [statement of material facts]." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 8, 742 A. 2d 933, 938 (internal quotations and citations omitted). Finally, the court gives the party opposing a summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22.

## B. Partnership or Joint Venture Theory

A partnership is "an association of 2 or more persons . . . to carry on as co-owners [sic] a business for profit." 31 M.R.S.A. § 286 (2006). "The right to participate in control of the business is the essence of co-ownership." *Dalton v. Auston*, 432 A.2d 774, 777 (Me. 1981). The determination of whether "a partnership has been formed is a fact intensive inquiry in which 'no one factor alone is determinative.' " *John Nagle Co. v. Gokey*, 2002 ME 101, ¶ 5, 799 A.2d 1225, 1227 (citation omitted). "Evidence relevant to the existence of a partnership includes evidence of a voluntary contract between two persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business with the understanding that a community of profits will be shared." Dalton, 432 A.2d at 777. Although the sharing of profits is prima facie evidence of a partnership, 31 M.R.S.A. § 287(4) (2006), its absence does not automatically preclude the existence of a partnership relationship.

"A joint venture is an association between two or more individuals or entities who agree to pool their efforts and resources to jointly seek profits." *Nancy W. Bayley, Inc. v. Employment Sec. Comm'n*, 472 A.2d 1374, 1377 (Me. 1984). "A joint venture can be found

3

'where persons embark on an undertaking without entering on the prosecution of the business as partners strictly but engage in a common enterprise for their mutual benefit.' *John Nagle Co.*, 2002 ME 101 ¶ 6, 799 at 1227 (citing *Simpson v. Richmond Worsted Spinning Co.*, 128 Me. 22, 29, 145 A. 250, 253-54 (1929). A joint venture is like a partnership in that its existence is dependant upon the circumstances of the parties' relationship. *John Nagle Co.*, 2002 ME 1010 ¶ 6, 799 at 1227. A joint venture is 'generally more limited in scope and duration' than a partnership. *Id.* (citation omitted).

All of the plaintiff's claims are predicated on the idea that McCurtain and Morrill were either partners or part of a joint venture. McCurtain and Morrill both attempted to find a third party to help them obtain the Bianchi property, with the goal of retaining portions of the property for themselves and disposing of the rest. DSMF ¶¶ 13, 15-17. McCurtain and Morrill both entered into a purchase and sale agreement together. DSMF ¶ 30. There is evidence on the record that would allow a fact finder to reasonably determine that the parties entered into a joint venture relationship to buy the Bianchi property. Since, there is no evidence on the record that the parties were intending to carry on as co-owners of a business there is no evidence to suggest that the parties entered a partnership.

### C. Count I: Breach of Fiduciary Duty

Parties who enter into a joint venture together owe a fiduciary duty to one another. *Allen v. Kent,* 153 Me. 275, 277, 136 A.2d 540, 542 (1957). There is no case law that defines what fiduciary duties are owed to individuals in a joint venture. In partnerships, fiduciary duties owed are the duty of loyalty and the duty of care. 31 M.R.S. § 1044 (1)(2006). The Maine legislature has adopted sections of the Uniform Partnership Act in 31 M.R.S. §§ 1001-1105. Given the proximity of a joint venture and partnership relationships, it is likely that the fiduciary duties owed in a joint venture are

4

similar to the duties owed in a joint venture. The duties, like the relationship itself, are likely more limited in scope and duration due to the more limited nature of the joint venture and the fact that the duties are not codified in statute. In partnerships, the duty of loyalty is limited, but includes a duty to act as a trustee for the partnership of a partnership opportunity and to refrain from acting with a party who is adverse to the partnership's interest. 31 M.R.S. § 1044(2)(A) (2006). The duties also include an obligation of good faith and fair dealing. 31 M.R.S. § 1044(4)(2006).

The parties' accounts of the circumstances surrounding the sale of the Bianchi property to Blair differ considerably. There is evidence that Morrill was paid $50,000 to facilitate the sale to Blair. PASMF ¶ 63. McCurtain alleges he would have attempted to obtain the property with Blair and Morrill had he been aware of these circumstances. PASMF ¶ 61. There is some evidence to suggest that Morrill may have violated his fiduciary duty by profiting from the acquisition of the property by Blair, after his involvement with McCurtain in a joint venture to acquire the same property.

### D. Count II: Intentional Misrepresentation

> To prevail on a claim for intentional misrepresentation,
>
> the plaintiff must prove by clear and convincing evidence: (1) that the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage.

*Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771, 773. "When a plaintiff alleges a failure to disclose rising to the level of a misrepresentation, the plaintiff must prove either (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose." *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995).

5

The parties did have a special relationship, which may have imposed upon the defendant a duty to disclose. The failure of such disclosure may have risen to the level of fraud. There are at least two instances that McCurtain are claiming created an affirmative duty for Morrill to disclose information to him. First concerns the amount of money that Morrill could have raised to contribute to the joint venture, which is in dispute and which McCurtain asserts Morrill misrepresented the actual figure. McCurtain also asserts that Morrill had an affirmative duty to inform him that Blair was going to obtain the property and that Blair desired to revive the contract with Morrill and McCurtain to purchase the property. McCurtain maintains that Morrill's failure to do so was an omission that amounted to fraud.[2] McCurtain also states that he relied to his detriment on Morrill and was injured as a result of Morrill's misrepresentations. PASMF ¶¶ 61-62, 66. There is evidence on the record that a fact finder could find that Morrill's behavior constituted intentional misrepresentation that arose to the level of fraud.

**E. Counts VII and XII: Tortious Interference**

> Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages.

*Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110.

There is evidence that the opportunity to purchase the property was a prospective economic advantage. PASMF ¶ 66. If McCurtain prevails upon his claim for

---

[2] Morrill also states that an alternative basis to dismiss McCurtain claim is his failure to comply with M.R. Civ. P. 9(e), to plead fraud with particularity. In the amended complaint, McCurtain does allege that Morrill misrepresented the amount of money that he could contribute toward the acquisition of a property, however, he does not allege, in Count II, that Morrill failed to make him aware that Blair attempted to revive the contract, although these facts are incorporated by reference and appear earlier in the complaint.

intentional misrepresentation he would be able to prove the existence of fraud. McCurtain alleges the fraud prevented him from purchasing the property and if proved he may be able to demonstrate Morrill's misrepresentation proximately caused the injury he alleges. Therefore, there is evidence on the record that my lead a trier of fact to determine that Morrill's behavior constituted tortious interference.

In Count XII, McCurtain alleges Holly Morrill also tortiously interfered with McCurtian's acquisition of the property. However, there is no evidence on the record that Holly Morrill ever committed fraud or intimidation against McCurtain and, therefore, McCurtain cannot recover for tortious interference from Holly Morrill.

## F. Count XIII: Breach of Implied Covenant of Good Faith and Fair Dealing

McCurtain in his brief acknowledges "that a duty of good faith and fair dealing does not lie outside of contracts governed by the UCC," but points out that there is a duty of good faith and fair dealing in a fiduciary relationship. It is unclear if he is abandoning this claim or if he seeks to combine this count into his prior claim for breach of fiduciary duty. Since, there is no contractual duty of good faith and fair dealing this count fails to state claim upon which relief may be granted.

## G. Count XIV: Breach of Contract

The trier of fact determines if a contract exists and if that contract has been breached. See *Smile, Inc. v. Moosehead Sanitary Dist.*, 649 A.2d 1103, 1105 (Me. 1994); *Vanvoorhees, et al. v. Dodge*, 679 A.2d 1077,1080 (Me. 1996). "The party seeking to enforce the alleged contract ha[s] the burden to establish its existence." *Smile*, 649 A.2d at 1105.

> To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.

*Roy v. Danis*, 553 A.2d 663, 664 (Me. 1989) (citations omitted).

7

"Preliminary negotiations as to the terms of an agreement do not constitute a contract." *Smile*, 649 A.2d at 1105. Statements of intent that are given as reassurance cannot be construed as a contract because "an intention to do an act is not an offer to do it . . . a mere expression of intention or general willingness to do something. . . does not amount to an offer." *Searles v. Trustees of St. Joseph's College, et al.*, 1997 ME 128, ¶ 13, 695 A.2d 1206, 1212 (citing 17A Am. Jur. 2d Contracts ß 43 (1991)). In order for a contract to be enforceable, the agreement must be sufficiently definite to allow a court to determine the "exact meaning and fix exactly the legal liability of the parties." *Ault v. Pakulski*, 520 A.2d 703, 704 (Me. 1987).

There is evidence that the parties may have entered a joint venture in order to obtain the Sebago Lake property. Nowhere are the terms of their agreement memorialized and, by McCurtain's own testimony, the terms of the agreement were indefinite as to the amount of money to be supplied by each party. DSMF ¶¶ 22-27 and Pl.'s Responses to the DSMF ¶¶ 22-27. While the plaintiff disputes DSMF ¶¶ 23-24 and qualifies DSMF ¶¶ 25-26, McCurtain has not supplied facts, which would allow the court to determine the legal liability of the parties. While there is evidence of an agreement to pursue the purchase, McCurtain has failed to raise an issue of material fact concerning the enforceability of a specific agreement which the parties entered. Indeed, McCurtain's testimony is that the agreement was to remain flexible depending on if and who the third party they joined with to purchase the property was and how much he or she could have contributed. Pl.'s Response DSMF ¶¶22-27. An agreement to agree or an intent to agree at a future point in time does not constitute an enforceable contract.

8

## H. Count XV: Negligent Misrepresentation

For negligent misrepresentation claims, the Law Court adopted section 552(1) of the Restatement (Second) of Torts (1977). *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771, 774. Negligent misrepresentation is defined as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) Torts § 552(1). The Law Court has noted that "comment a to section 552(1) observes that liability for negligent misrepresentation is 'more restricted than that for fraudulent misrepresentation.'" *Rand*, 2003 ME 122, ¶ 13, 823 A.2d at 774. Determining the reasonableness of the defendants conduct is the primary task of the fact-finder. *Id.* 823 A.2d at 774-775.

McCurtain's basis for negligent misrepresentation is the same as his basis for intentional misrepresentation. McCurtain alleges that Morrill's false statements concerning his ability to contribute money towards the acquisition of the property and his failure to disclose that Blair had renewed his interest in purchasing the property provide a basis for recovery under negligent misrepresentation. There is evidence that Morrill had a pecuniary interest in the transaction because he entered a purchase and sale agreement and he may ultimately have been paid by Blair. DSMF ¶ 32 and PASMF ¶ 63. McCurtain claims to have relied upon Morrill's representations to his detriment. PASMF ¶¶ 61, 65-66. The reasonableness of the parties' actions is for the trier of fact to determine. There remains a genuine issue of material fact concerning whether Morrill committed negligent misrepresentation.

9

## IV. DECISION AND ORDER

The clerk will make the following entries as the Decision and Order of the court.

A. Defendants' Motion for summary judgment is denied on the following counts:

> Count I – Breach of Fiduciary Duty as to Jon Morrill;
> Count II – Intentional Misrepresentation as to Jon Morrill;
> Count VII – Tortious Interference by Jon Morrill; and,
> Count XV – Negligent Misrepresentation.

B. Defendants' Motion for summary judgment is granted on the following counts:

> Count XII – Tortious Interference as to Holly Morrill;
> Count XIII – Breach of Implied Covenant of Good Faith and Fair
> Dealing; and,
> Count XIV – Breach of Contract.

SO ORDERED.

Dated: May 1, 2007

Thomas E. Delahanty II
Justice, Superior Court

10

*O-* THEODORE SMALL ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04104-5029

*P -* THEODORE IRWIN JR ESQ
IRWIN TARDY & MORRIS
52 CENTER ST
PORTLAND ME 04101