STATE OF MAINE
PENOBSCOT, SS.

DISTRICT COURT
Docket No. CV-10-009

VICKI HENDERSON, ET. AL.,      )
                 Plaintiffs,     )
                                 )
                                 )
                                 )
            v.                   )           **JUDGMENT**
                                 )
                                 )
ALAN S. HEWES,              )
              Defendant.   )

*FACTS*

This matter came before the Court for hearing on February 25, 2011. Plaintiff was present, both in her individual capacity and as personal representative of the Estate of Thomas A. Henderson, and was represented by Attorney Dearborn. Defendant was present and was represented by Attorney Peter Baldacci. On January 6, 2010 Plaintiffs filed a three count complaint. Each count alleged breach of an agreement: count one for room and board, count two for a loan, and count three for a television.

Vicki Henderson and Alan Hewes are brother and sister. Over the years, Alan Hewes periodically lived with Vicki Henderson and her late husband Thomas Henderson. In the 1970s, Mr. Hewes lived with the Hendesons in Orono and then in Orrington. Ms. Henderson recalled that Mr. Hewes paid $20.00 per week toward his room. Mr. Hewes recalled that he did not pay for his room in Orono, but began paying $20.00 per week when they all moved to Orrington together. Given the passage of time, the Court cannot determine whose memory is the most accurate and the probative value of this testimony is limited.

Mr. Hewes next lived with the Hendersons in 2005. His home in Eddington had burned and he stayed with the Hendersons while he re-built the home. In 2005, Mr. Hewes was able-bodied. He spent very little time at the Henderson home as he was working, and he rarely had meals with them. Mr. Hewes paid $40.00 per week to the Hendersons during the year or so he spent with them around 2005.

In November of 2006, Mr. Hewes was involved in a motor vehicle accident that left him with serious bodily injury. He was rendered unable to work. Since he was unable to maintain his home, he sold it in May of 2007. Prior to the sale of the home, Mrs. Henderson spent time cleaning Mr. Hewes' house. While discussing Mr. Hewes' situation, Mrs. Henderson offered to have Mr. Hewes live with her again. Mr. Hewes said he didn't have the money. Mrs. Henderson responded something to the effect of "don't worry about it, just get better". Mr. Hewes then stated something to the effect of "when I get my settlements, we'll square up". Mr. Hewes moved into the Henderson home in May of 2007, and stayed for about two years. The Hendersons claimed Mr.

1

Hewes as a dependent on their income tax returns. Mr. Hewes received settlements after he left the Hendersons' home.


## LAW

To establish a binding agreement, the mutual assent to be bound by all of its material terms must be reflected and manifested either expressly or impliedly in the contract and the contract must be sufficiently definite to enable a court to determine its exact meaning and fix any legal liability of the parties. June Roberts Agency, Inc. v , 676 A. ed at 48 (quoting Smile, Inc. v. Moosehead Sanitary District, 649 A. 2d 1103, 1105 (ME. 1994).

It is an elementary principle of contract law that mutual assent (i.e. a meeting of the minds) is judged by an objective standard. *Zamore v. Whitten*, 395 A.2d 435, 440 (Me. 1978). The test is whether a non-party looking at the objective evidence would conclude that a contract had been formed. *Id.* Neither party is charged with knowing what subjective intent lurked in the mind of the other. *Id.*


## Count One

Count One of the Complaint alleges a breach of contract for payment of room and board.

There was no discussion between Mrs. Henderson (or Mr. Henderson) and Mr. Hewes about Mr. Hewes paying anything in particular to the Hendersons for room and board before he moved into the Henderson home in 2007. In fact, the Court finds that Mrs. Henderson told Mr. Hewes not to worry about it. This statement by Mrs. Henderson seems reasonable in light of Mr. Hewes' significant injuries, his no longer working and selling his house because he was unable to afford to keep it. It appears that Mrs. Henderson anticipated that Mr. Hewes would pay at least the $40.00 he had been paying before, if not more, since when Mr. Hewes moved in with the Hendersons after his accident he regularly ate with the family. Mr. Hewes, on the other hand, believed that his sister was offering assistance to him because of his injury and that she did not expect him to pay for this family assistance[1].

The Court finds that Mr. Hewes, on more than one occasion, stated that he would "square up" with the Hendersons when he received his settlement(s). However, what he meant by "squaring up" is without definition. Despite his statements he would "square up", the Court cannot determine the exact meaning of this term and cannot fix the liabilities of the parties based on it. Mr. Hewes contributed his monthly food stamps (about $200.00/month) to the Hendersons' groceries and he allowed Mr. Henderson to use some equipment from which Mr. Henderson generated income. Mr. Hewes also helped out around the Henderson home on projects.

---

[1] Members of the Hewes family seem to help each other in various ways. Mrs. Henderson (formerly a Hewes) and her sister helped their brother, Mr. Hewes, by cleaning his house when he was injured. Ronnie Hewes helped the Hendersons install a wood stove. Mr. Hewes and his brothers own some equipment together. Michael Hewes loaned Defendant a chop saw to do work on the Plaintiffs' home.

It is the Plaintiffs' burden to establish that an agreement existed between the parties. Because Mr. Hewes' circumstances were entirely different after his accident than after the fire, the Court is not satisfied that the prior $40.00 per week agreement constituted a 'course of conduct' or that any course of conduct had application after the substantial change in Mr. Hewes' circumstances. The Court is also not satisfied that the parties had any meeting of the minds with respect to what, if anything, Mr. Hewes would pay to the Hendersons, or for what time period he would be liable to pay (for example, would he only have to start to pay after he recovered).

Plaintiff has not met her burden of proof, and the Court enters Judgment for the Defendant on Count One.

## Count Two

Count two of the Complaint alleges breach of an agreement by Mr. Hewes to repay a loan from Mr. Henderson.

During the time Mr. Hewes lived with the Hendersons he periodically borrowed money from Mr. Henderson. Mr. Henderson recorded the amounts Mr. Hewes borrowed in a booklet. Plaintiff has produced a booklet as Plaintiff's Exhibit # 8. While Defendant disagrees that Exhibit # 8 is the booklet in which Mr. Henderson kept the ledger, the Court is satisfied that the booklet contains the amounts of money loaned by Mr. Henderson to Mr. Hewes. The Court is satisfied that Mr. Hewes agreed that he would re-pay the money he borrowed.

The amount reflected in the booklet as the amount owed is $3,845.00. The loans as reflected in the booklet begin in June of 2008 and end in December of 2008. This time frame is consistent with Mr. Hewes' testimony that he did not begin to borrow money for awhile after he moved in with the Hendersons because he had "escrow money" left from the sale of his home and that he did not borrow money for the last several months he lived with the Hendersons.

Mr. Henderson testified (in his deposition testimony before his death) that Mr. Hewes did not repay any of the money. Mr. Hewes contends that he re-paid $600.00 to Mr. Henderson, and that such payment is not reflected in the booklet. Mr. Hewes contends that he owed Mr. Henderson $750.00 when he left the Henderson home as that was the amount Mr. Henderson last told him he owed.

Mr. Hewes and Mr. Cote convincingly testified that Mr. Hewes sold tools to Mr. Cote for $1,300.00. While Mr. Cote does not know what Mr. Hewes did with the money, Mr. Hewes reported to Mr. Cote that he intended to give the Hendersons money for a television. Mr. Hewes testified that he paid the Hendersons $400.00 for the television, $600.00 toward his debt, and kept $300.00 in his own pocket. Further, Mr. Hewes testified that he provided the Hendersons with the $1,000.00 at a time when they were putting money together to purchase items from a doctor who was moving (July, 2009). While Mr. Hewes testified that he paid Mr. Henderson in the presence of Mrs. Henderson, Mrs. Henderson testified that she never saw this re-payment. It may be that Mrs. Henderson was not present when the money transferred hands or it may be that Mrs. Henderson was present but concentrating on something else when the money was

3

paid, but the Court is satisfied that Mr. Hewes paid Mr. Henderson $600.00 toward the money he borrowed from him. The Court finds that Mr. Hewes borrowed a total of $3,845.00 from Mr. Henderson and that he paid $600.00 toward the debt.

Additionally, Defendant agreed to pay Plaintiffs to have satellite television service directly in his bedroom. The Court allows amendment of the Complaint to the extent Defendant testified he agreed to pay Plaintiffs for the satellite service ($10/month)[2]. The Court finds that the Plaintiffs provided the satellite service to Defendant for 16 months, and therefore awards Plaintiffs $160.00 for providing the satellite service.

Therefore, Judgment is entered for the Plaintiffs on Count Two in the amount of $3,405.00 ($3,245.00 + $160.00). The Court is not satisfied that any set off is appropriate on the claim for repayment of the monies loaned or repayment for the satellite television service.

### Count Three

Count three alleges breach of an agreement by Mr. Hewes to repay the Hendersons for a television they purchased for him. During the time Mr. Hewes lived with the Hendersons, the Hendersons purchased a television for Mr. Hewes for $400.00 (July, 2009). The Hendersons maintain that Mr. Hewes did not pay them for the television. However, the Court is satisfied that Mr. Hewes agreed that he would pay the Hendersons for the television, and, as stated above, the Court is satisfied that Mr. Hewes paid Mr. Henderson the $400.00.

Therefore, Judgment is entered for the Defendant on Count Three.

The entry shall be:
> Judgment for Defendant on Count One.
> Judgment for Plaintiffs on Count two in the amount of $3,405.00.
> Judgment for Defendant on Count Three.

Dated: March 17, 2011

Ann M. Murray
Justice, Maine Superior Court

JUDGMENT ENTERED UPON THE DOCKET ON 3/23/11.

---

[2] Count two as alleged in the Complaint requested only an award for repayment of money loans. The satellite television dish issue was raised in the deposition testimony of Mr. Henderson. However, while raised during Mr. Henderson's deposition, the issue was not explored (amount or duration). Since the issue was raised in discovery, the Court will allow the complaint to be amended, but only as to the amount that the Defendant testified he agreed to pay ($10/month). Plaintiffs' Exhibit 10 is admitted for the sole purpose of demonstrating that the satellite dish was available to the Defendant for 16 months.

4

STATE OF MAINE
PENOBSCOT, ss .

DISTRICT COURT
DISTRICT THREE
DIV. OF S. PENOBSCOT
Bangor, Maine
Docket No.  BANDC-10-CV-9

THOMAS A. HENDERSON and )
VICKI A. HENDERSON, )
  )
  )
  )   **AMENDED**
     **Plaintiffs,** )   **ORDER**
  )   **ON MOTION FOR**
  **vs.** )   **SUBSTITUTION OF PARTIES**
  )
**ALAN S. HEWES,** )
  )
     **Defendant.** )

Upon the Motion For Substitution of Parties pursuant to M.R.Civ.P. Rule 25(a) filed by Vicki A. Henderson, Personal Representative of the Estate of Thomas A. Henderson, and with consent of the Defendant:

IT IS HEREBY ORDERED, Vicki A. Henderson, Personal Representative of the Estate of Thomas A. Henderson, is substituted as Plaintiff in the above entitled case for Thomas A. Henderson individually. Vicki A Henderson shall continue as a Plaintiff in her individual capacity.

Dated at Bangor, Maine.
February 25, 2011

_____
Justice Ann Murray
Penobscot County Superior Court

1