263 F.Supp.2d 130 (2003)
Kathleen BRESNAHAN, Plaintiff
v.
Jonathan BOWEN, Defendant
No. CIV.02-160-P-C.
United States District Court, D. Maine.
May 20, 2003.
*132 Bernard J. Kubetz, Eaton, Peabody, Bradford & Veague, Bangor, ME, for Kathleen Bresnahan, Plaintiff.
David L. Herzer, Jr., Norman, Hanson & Detroy, Portland, ME, for Jonathan owen, Defendant.

MEMORANDUM OF DECISION AND ORDER
GENE CARTER, Senior District Judge.
Now before the Court is Defendant Jonathan Bowen's Motion for Summary Judgment ("MSJ") (Docket Item No. 8). This case arises out of a collision between Plaintiff and Defendant on a ski slope at the Sunday River Ski Resort in Bethel, Maine. Plaintiff asserts claims for common-law negligence and violation of 32 M.R.S.A. § 15217 and seeks damages for injuries she allegedly sustained as a result of this collision. Defendant asserts that there is no dispute of material fact and that he is entitled to judgment as a matter of law. For the reasons set forth below, the Court will deny Defendant's motion.

I. Facts
Although Plaintiff and Defendant did not know each other before the collision, they both held season's passes to Sunday River Ski Resort in Bethel, Maine. Defendant's Statement of Material Facts ("DSMF") (Docket Item No. 9) ¶¶ 6, 9, 14; Plaintiffs Statement of Additional Material Facts ("PSAMF") (Docket Item No. 11) ¶ 9. On March 4, 2000, Plaintiff Kathleen Bresnahan and Defendant Jonathan Bowen were skiing at Sunday River. Plaintiff was in the midst of a group ski lesson given by the Perfect Turn organization when a collision occurred between her and Defendant Bowen. DSMF ¶3; PSAMF ¶ 2. According to Plaintiff, while she was engaged in her ski lesson and facing downhill, she was struck from behind by Defendant on the right side of her body, and as later determined, she sustained a fracture of the greater tuberosity of the right shoulder, a Hill-sach lesion, hematomas to her right thigh and arm, a blow to the head, and severe facial trauma. PSAMF ¶¶ 3-5. Plaintiff did not see Defendant *133 before the impact, and does not know precisely how fast he was going. DSMF ¶ 18; PSAMF ¶ 11. Defendant denies that Plaintiff was squarely facing down hill when the collision occurred,[1] denies that he collided with her right side, and further denies causing the injuries alleged by Plaintiff. Defendant's Response to Plaintiffs Statement of Additional Material Facts ("Def.'s Resp. to PSAMF") (Docket Item No. 15) ¶¶ 3-5.
In order to obtain their season's passes, Plaintiff and Defendant both signed separate but identical release forms with the Sunday River Ski Resort. DSMF ¶¶ 6-7, 9; PSAMF ¶ 9. The release was entitled "Acknowledgement and Acceptance of Risks and Liability Release and Promise Not to Sue" and stated in relevant part,
As a condition of being permitted to use the Ski Area premises I hereby Promise Not to Sue whichever ski area where this pass is used at including ... Sunday River Skiway Corporation ... c thenowners, affiliates, employees and agents (hereinafter the Ski Area) ... as I freely and voluntarily Accept all risks of injury, death or property damage occurring thereon.
I further agree to Release, Hold Harmless and Indemnify the ski area from any and all liability for personal injury including death, and property damage from any alleged negligence in the operation, maintenance or design of the ski area and any other conditions of the ski area's premises such as those listed in the WARNING paragraph above, and from my participation in alpine activities at the ski area. I am fully aware that all forms of alpine activities are hazardous, filled with high risks and that falls, collisions and injuries are a common occurrence in these activities. I accept for myself the full responsibility for any and all such damage or injury of any kind that may result from my actions.
Acknowledgement and Acceptance of Risks and Liability Release and Promise Not to Sue attached as Exhibit B to DSMF Exhibit 4 (emphasis in original). The "WARNING" paragraph referred to above included risks such as "collisions with other skiers/riders; and the failure of others to ski/ride safely, in control or within their own ability." Id. Plaintiff also signed a release with Perfect Turn in order to participate in the skiing lesson. DSMF ¶ 4; PSAMF ¶ 7. This release was entitled "Acknowledgement & Acceptance of Risks & Liability Release" and provided, in relevant part,
WARNING: All forms of Alpine activities are hazardous, requiring the deliberate control and good judgment of the participant. Falls and injuries are common occurrences of the activities, including these clinics. The participant will be continually challenged in the clinics by performing difficult maneuvers on formidable terrain. These challenges, plus changing weather ... collisions with other skiers, riders, are inherent to all Alpine activities.
I hereby acknowledge and accept these risks in order to become a more accomplished skier/boarder. I take full responsibility for any injury or damage that may result from this activity and Promise Not to Sue on account of my participation in the clinic and the risks such as those listed above.
As a condition of being permitted to use the ski area premises and to enroll in *134 this clinic, I, for myself and my heirs, hereby release ... Sunday River Skiway Corp, ... and Perfect Turn, Inc.... its owners, affiliates, employees and agents from any and all liability for personal injury, including death and property damage arising from any alleged negligence in the operation or maintenance or design of the ski area and other conditions such as those listed in the WARNING above.
Acknowledgement & Acceptance of Risks & Liability Release, attached as Exhibit B to DSMF Exhibit 4.
Plaintiff alleges that Defendant, admittedly an expert skier able to ski on double black diamond trails, was skiing too fast, beyond his ability, and out of control, and that he failed to yield to Plaintiff as the down-hill skier, DSMF ¶¶ 12, 24; Complaint (Docket Item No. 1) ¶¶ 8, 16. As a result of his alleged negligence, Plaintiff claims to have sustained the above-described injuries.

II. Legal Standard
Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, All U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "`Material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, All U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e).

III. Discussion
Plaintiff's suit alleges that Defendant should be found negligent under both common law and 32 M.R.S.A. § 15217, entitled "Skiers' and Tramway Passengers' Responsibilities" ("Skiers' Responsibilities Act").[2] In order to establish common law negligence in Maine, a plaintiff must show (1) a duty owed to plaintiff by defendant; (2) a breach of that duty; and (3) that the breach was the actual and legal cause of plaintiffs injury. Walker v. General Elec. Co. 968 F.2d 116, 120 (1st Cir.1992) (citing Parker v. Harriman, 516 A.2d 549, 550 (Me.1986); Adams v. Buffalo Forge Co., 443 A.2d 932, 938 (Me.1982)). Section 15217(4) of the Skiers' Responsibilities Act is entitled "Duty to Ski within Limits of Ability." It provides:
A skier has the sole responsibility for knowing the range of the skier's own ability to negotiate any slope or ski trail, *135 and it is the duty of the skier to ski within the limits of the skier's own ability, to maintain control of the rate of speed and the course at all times while skiing, to heed all posted and oral warnings and instructions by the ski area operator and to refrain from acting in a manner that may cause or contribute to the injury of the skier or others.
Section 15217(5) goes on to address responsibility for collisions: "The responsibility for a collision between any skier while skiing and any person or object is solely that of the skier or skiers involved in the collision and not the responsibility of the ski area operator or its agents, representatives or employees."[3]
Defendant asserts two affirmative defenses to Plaintiffs claims of common law and statutory negligencerelease and assumption of riskand claims he has proven these defenses such that he is entitled to judgment as a matter of law. Defendant has the burden of proving these affirmative defenses by a preponderance of the evidence. Doughty v. Sullivan, 661 A.2d 1112,1123 (Me.1995).

A. Release
Defendant claims that Plaintiff released all claims against him by signing release forms with the Sunday River resort and with the Perfect Turn skiing school. Defendant argues that by signing those release forms and not expressly reserving her right to sue Defendant, Plaintiff has waived any such claims. Defendant further argues that although he did not sign "the very release forms Bresnahan signed," he was nonetheless "an immediate party to both releases" because Plaintiff relinquished her right to sue Sunday River for a collision with a skier, and Defendant is "just such a skier." MSJ at 5. Defendant also asserts that "Bowen did sign an identical season's pass release form, which makes him an immediate party to the release even aside from his status as a colliding skier mentioned in both releases." Id.
"A release is a contract that can only bar a claim if the claimant was a party to the agreement." Hardy v. St. Clair, 739 A.2d 368, 371 (Me.1999). Defendant is not a party to the Releases between Plaintiff and the ski area, and Plaintiff is not a party to the Release between Defendant and the ski area. The fact that Defendant and Plaintiff signed separate, identical releases with the ski area is of no import to this case and does not create a contract between Plaintiff and Defendant. What exists are two separate and discrete contracts; one between Plaintiff and the ski area, and one between Defendant and the ski area. Each of those contracts governs only the relationship and rights running between the specific parties to those contracts, and neither affects the rights of any party outside the release. The fact remains that Plaintiff did not sign a release waiving her right to sue Defendantshe signed only releases waiving her right to sue Sunday River and Perfect Turn. It is undisputed that there is no document that bears both Plaintiffs and Defendant's signatures, and no document naming both Plaintiff and Defendant as parties. In short, there is no contract or agreement between these parties. Defendant *136 can cite no legal authority to support his theory that he is an immediate party to the releases signed by Plaintiff with the ski resort and ski school, and the Court itself cannot discern any rationalogical basis for this theory.[4]
Defendant cites three cases to support his assertion that Plaintiffs claim should be barred: Norton v. Benjamin, 220 A.2d 248 (Me.1966); Butters v. Kane, 347 A.2d 602 (Me.1975); and Cyr v. Cyr, 560 A.2d 1083 (Me.1989). All three of these cases are inapposite because they all deal with express releases resolving all claims between immediate parties to a release. That is, there is no question as to who are the parties to a release, but instead, in each case the issue concerns additional claims of those parties when the release purports to resolve all claims. The instant case is not about one party bringing an additional claim against the other party to a releaseit is about one party to a release bringing a claim against a third, independent party who is outside the effect of the release signed by the suing party. Therefore, the cited cases do not aid Defendant's argument. See also Emery Waterkouse Co. v. Lea, 467 A.2d 986, 996 (Me.1983) (Release between two parties concerns only those two parties and plays no role in the determination of rights between one of those parties and a third party; third party was in no way involved in [the] release arrangement and should not benefit from it in any way). Because Defendant is not a party to any contract, agreement, or release with Plaintiff, his argument that Plaintiff nonetheless released all claims against him proves unavailing.

B. Assumption of Risk
Defendant also claims that Plaintiff expressly assumed the risk of colliding with other skiers by signing the releases with Sunday River and Perfect Turn skiing school and that, by assuming this risk, Plaintiff is barred from bringing a negligence claim against Defendant. First, much like with Defendant's defense of release, Defendant cannot prevail on his defense of assumption of risk where the contracts signed by Plaintiff were with Sunday River and Perfect Turn, not with Defendant. In the releases signed with the ski operators, Plaintiff indicated that she assumed the risks of skiing insofar as she would not sue Sunday River or Perfect Turn for any accidents or injuries resulting from these risks. The releases said nothing about this assumption of risk affecting her right to sue anyone beyond the ski area and its owners, affiliates, employees, and agents, and Defendant has cited no case law in Maine supporting his contention that Plaintiff's assumption of risk vis-a-vis Sunday River and Perfect Turn extends to every other conceivable defendant.
Further, Defendant's argument that Plaintiff assumed the risk of collision such that she is precluded from suing the other colliding skier squarely contradicts the language of section 15217. See 32 M.R.S.A. § 15217. Much like the language in the release signed by Plaintiff, section 15217(2) purports to limit the liability of ski area operators, and it states that skiers accept the risks inherent in the sport of skiing, *137 and to that extent, may not maintain an action against a ski area operator, its agents, representatives or employees for any losses, injuries, damages or death that result from these inherent risks. Clearly juxtaposed with this liability limiting provision is paragraph (4) of this section which imposes a duty on each skier "to ski within the limits of the skier's own ability, to maintain control of the rate of speed and the course at all times while skiing ... and to refrain from acting in a manner that may cause or contribute to the injury of the skier or others," and paragraph (5) which imposes the responsibility for any collisions between skiers upon those skiers involved in the collision. See 32 M.R.S.A. § 15217(4), (5). Given the clear intent under Maine law to confine the responsibility for skiing accidents to those skiers involved, coupled with the lack of an agreement of any sort between Plaintiff and Defendant as to any allocation of responsibility for any such accident, Defendant has failed to prove by a preponderance of the evidence that he should prevail as a matter of law on his defense of assumption of risk.

IV. Conclusion
For the foregoing reasons, the Court hereby ORDERS that Defendant's Motion for Summary Judgment on Plaintiffs common law and statutory negligence claims be, and it is hereby, DENIED, and Defendant's Motion for Summary Judgment on Plaintiffs claim for punitive damages be, and it is hereby, GRANTED.
NOTES
[1] Specifically, Defendant denies that the collision was "`from behind' Plaintiff in the sense that he would have been the uphill skier and she would have been in front of him and downhill." Def.'s Resp. to PSAMF ¶ 5.
[2] In Plaintiff's Complaint, she also asserted a claim for punitive damages. However, there is no evidence in the record to support such a claim, and Plaintiff has not argued this claim on summary judgment. Therefore, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's punitive damages claim.
[3] This provision augments the immunity of ski area operators from suit already provided for in section 15217's earlier provision entitled "Acceptance of Inherent Risks." That provision states, in part, that "each person who participates in the sport of skiing accepts, as a matter of law, the risks inherent in the sport and, to that extent, may not maintain an action against or recover from the ski area operator, or its agents, representatives or employees, for any losses, injuries, damages or death that result from the inherent risks of skiing." 32 M.R.S.A. § 15217(2).
[4] The Court notes that Defendant does not argue that he is a third-party beneficiary to the Release form signed between Plaintiff and Sunday River or Perfect Turn. In fact, Defendant explicitly points out that he does not contend to be a third-party beneficiary to the releases signed by Bresnahan, and does not seek to enforce the releases under this theory, but instead seeks "to defeat Bresnahan's claims against him based on her express release of rights made without reservation." Defendant's Reply in Support of Motion for Summary Judgment (Docket Item No. 14) at 1.